187 P.3d 1115

**ANTONIO P., Appellant,**

v.

**ARIZONA DEPARTMENT OF ECONOMIC SECURITY,**
**Anna P., Appellees.**

**No. 1 CA–JV 07–0149.**

Court of Appeals of Arizona,
Division 1, Department B.

April 1, 2008.

Review Denied June 3, 2008.

Janelle A. Mc Eachern, Chandler, Attorney for Appellant.

Terry Goddard, Attorney General By Rebecca P. Thompson, Assistant Attorney General, Phoenix, Attorneys for Appellees.

Bruce Peterson, Office of the Legal Advocate By Pamela J. Eaton, Deputy Legal Advocate, Phoenix, Guardian ad Litem.

## OPINION

IRVINE, Judge.

¶ 1 Antonio P. appeals from the juvenile court's order placing his daughter with her maternal aunt and uncle instead of with the child's paternal grandmother, Antonio's mother.[1] We conclude that the preferences for placement contained in Arizona Revised Statutes (A.R.S.) section 8–514(B) (2007) do not mandate placing a child with a person with an acceptable higher preference if the juvenile court finds it in the child's best interests to be placed with someone with a lower preference. Therefore, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Anna, born in April 2002, is the biological child of Antonio P. and Amber C. Antonio impregnated Amber when she was fourteen or fifteen. Antonio was serving a sentence of lifetime probation for molesting Amber when he molested and impregnated his roommate's fourteen year old daughter. After Antonio was in jail and facing charges for molesting the second fourteen-year-old, the Arizona State Department of Economic Security (ADES) filed a dependency petition regarding Anna based on Antonio's inability to parent while incarcerated and his status as a child abuser.[2]

¶ 3 Subsequent to the dependency determination, the court granted ADES's request to move Anna from foster care to her maternal aunt and uncle. Because Antonio wanted Anna to be placed with his mother, he requested an evidentiary hearing.

¶ 4 At the evidentiary hearing, the Assessment of Attachment and Best Interest report by Dr. Glenn Moe, a licensed psychologist, was admitted into evidence. The report stated:

It is clear from observing [Anna] as well as speaking with her that she has a very positive view of the relationship with her aunt and uncle.... Anna speaks highly of them and will spontaneously mention them in her conversation. It appears that her attachment with [her aunt and uncle] began during her early childhood when the aunt and uncle provided care for Anna on and off during the first three years of her life. Their relationship has been rekindled

---

1. Both sets of relatives are residents of Tennessee.

2. Amber, also incarcerated and a party to the ADES's dependency action involving Anna, is not a party to this appeal.

through phone conversations which began in June 2006 when she was placed in foster care and with visits which have occurred when the [aunt and uncle] have returned to Phoenix over the past six months. It was also clear during the assessment that [the aunt and uncle] feel closely bonded in the relationship with Anna. They clearly love the child as if she were their own. Furthermore, it appears from a review of the records combined with the interview of [the aunt and uncle] that they have the ability to provide an excellent placement for Anna.

[The grandmother and her fiancé] also appear to have the capacity to provide an excellent home for Anna. Their relationship with the child has included only recently meeting Anna during their trip to Phoenix. However, it was clear that these grandparents have thought a lot about this child since she was taken in CPS care and they have opened their hearts and minds to the idea of rearing her. It appears that Anna has responded well to·[the grandmother and her fiancé] and she was observed to relate well with them during the assessment. Therefore, there certainly appears to be the capacity for Anna to develop a positive and close attachment with her grandmother and step-grandfather over time.

. . . .

[I]t is this examiner's conclusion that both the aunt and uncle as well as the grandparents could provide a safe, nurturing, and quality home for Anna. In fact, Anna would benefit from having ongoing relationships with the maternal and paternal sides of the family. Therefore, whichever relative is not chosen to be the permanent placement for this child should be allowed visitation access so that Anna can grow up with the benefit of knowing both sides of her biological family.

¶ 5 Dr. Moe recommended the court place Anna with her aunt and uncle. Dr. Moe recommended placement with the aunt and uncle over the grandparents because Anna has a longer relationship with her aunt and uncle than with her grandparents, she already has an attachment with her aunt and

uncle "that is undeniable," and her aunt and uncle are an age that is more traditional for child rearing.

¶ 6 At the conclusion of the hearing, the court found that ADES met its burden of proof regarding placement for Anna and that placement with her aunt and uncle was consistent with Anna's needs and was in Anna's best interest. Antonio timely appealed.

## DISCUSSION

¶ 7 An order awarding custody of a dependent child as well as a subsequent order ratifying or changing a child's placement is final and appealable. *Lindsey M. v. Ariz. Dep't of Econ. Sec.*, 212 Ariz. 43, 45–46, ¶ 9, 127 P.3d 59, 61–62 (App.2006). A parent, even one who is incarcerated and unable to have custody of the child, has standing to appeal as an aggrieved party. *Id.* at 46, ¶¶ 10–12, 127 P.3d at 62. We therefore have jurisdiction under A.R.S. § 8–235(A) (2007).

¶ 8 Juvenile courts have substantial discretion when placing dependent children because the court's primary consideration in dependency cases is the best interest of the child. A.R.S. § 8–845(A)(2) (2007) (providing that a court may award a dependent child to a grandparent or other "member of the child's extended family" when it is "in the child's best interests"); *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21, 119 P.3d 1034, 1038 (App.2005) (the juvenile court has "a great deal of discretion" because the child's best interests is always the primary concern in dependency cases). We review the placement orders of dependent children for an abuse of that discretion. *Maricopa County Juv. Action No. JD–6236*, 178 Ariz. 449, 451, 874 P.2d 1006, 1008 (App. 1994).

¶ 9 Antonio argues that the court abused its discretion when it placed Anna with her aunt and uncle. Antonio asserts that because both sets of relatives were approved, the court's initial step for deciding where to place Anna should have been to conclude the first choice was with her grandmother and the second choice her aunt because A.R.S. § 8–514(B) requires the court place the child with a grandparent over an-

other relative. Only after establishing that Anna's grandmother was first choice, he argues, should the court take into account Anna's best interests. According to Antonio, this analysis would have led the court to place Anna with her grandmother because both homes were approved, the Best Interest report recommended that the grandmother have visitation with Anna, and because Anna "barely knew ... her ... [a]unt or her ... [g]randmother."

¶ 10 Section 8–514(B)(1)–(3) states that "[t]he department shall place a child in the least restrictive type of placement available, consistent with the needs of the child. The order for placement preference is as follows:" (1) with a parent, (2) a grandparent, (3) another member of the child's extended family.

¶ 11 A court will interpret a statute so it can discern and apply the legislature's intent when it enacted the statute under review. *US West Commc'n, Inc. v. City of Tucson*, 198 Ariz. 515, 520, ¶ 11, 11 P.3d 1054, 1059 (App.2000). This process entails looking at the words of the statute first. *Id.* If the words do not reveal the legislature's intent, then the court looks to the statute as a whole to determine the meaningful effect of each provision. *Id.* Only when a term is ambiguous, however, will the court use secondary principles of statutory construction to discern the legislature's intent. *Mago v. Mercedes–Benz, U.S.A., Inc.*, 213 Ariz. 404, 408, ¶¶ 15, 17, 142 P.3d 712, 716 (App.2006) (holding that if Congress wanted to limit the definition of "buyer" in the Warranty Act to include only consumers who have a cause for relief under the statute, it would have used the word "consumer" instead of "buyer").

¶ 12 Here, we need not look beyond the language of § 8–514(B)(1)–(3). The statute clearly states that the order of placement is a preference, not a mandate. Preference means a "choice or estimation above another." Webster's New International Dictionary 1787 (3rd ed.2002).[3] Preference does

not mean that a certain choice or estimation is mandated. Section 8–514(B) provides the juvenile court with the legislature's preference for where or with whom a child is placed but it does not mandate that the order of preference be strictly followed when a placement is not consistent with the needs of the child. The statute neither mandates placing a grandparent first in line before determining a child's best interests nor does it mandate placing a child with a grandparent over an aunt or uncle. Moreover, the court is not obligated to find that a placement with a grandparent is *not* in the child's best interest before placing the child with an aunt, which is how Antonio seems to interpret the statute. The statute requires only that the court include placement preference in its analysis of what is in the child's best interest.

¶ 13 Consequently, what Antonio proposes is outside the language of the statute. "It is a universal rule that courts will not enlarge, stretch, expand, or extend a statute to matters not falling within its express provisions." *Morrison v. Anway*, 87 Ariz. 206, 208–09, 349 P.2d 774, 775–76 (1960) (holding that the legislature did not intend a statute requiring well operators to report the legal descriptions of the land upon which a well was located to limit the use of water drawn from the well to only the land covered in the legal description). A court will not read meaning into a statute that is not within the legislature's "manifest intention ... as gathered from the statute itself." *Id.* at 209, 349 P.2d at 776. If we were to do so, our actions would alter the statute instead of interpreting it. *Id.* We cannot, therefore, give this statute the meaning Antonio proposes.

¶ 14 Antonio also asserts that the juvenile court should have waited for the results of the grandmother's home report before placing Anna with her aunt and uncle. Without deciding the issue, we note the record reflects that the grandmother's home report

---

3. When the legislature does not define a term, we give the term its plain meaning. A.R.S. § 1–213 (2002) ("Words and phrases shall be construed according to the common and approved use of the language."); *State v. Taylor*, 216 Ariz. 327, 333, ¶ 20, 166 P.3d 118, 124 (App.2007) (stating that when the legislature does not clearly express an intent to give a term special meaning, the court may use dictionary definitions for such common usage meaning).

was completed in October, 2006, prior to the child being placed with her aunt and uncle.

¶ 15 The juvenile court was fortunate to have two related families willing to care for Anna. It was within the court's discretion, however, to place Anna with her aunt and uncle. The court had evidence supporting its conclusion that placement with the aunt and uncle was more consistent with Anna's needs and best interests.

## CONCLUSION

¶ 16 Because A.R.S. § 8–514 does not require Anna to be placed with her grandmother over her aunt and uncle, it was within the juvenile court's discretion to place Anna with her aunt and uncle consistent with Anna's needs and in her best interests. We affirm.

CONCURRING: DANIEL A. BARKER, Presiding Judge and DIANE M. JOHNSEN, Judge.