NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DAVID F., MICHELLE F., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, [1] JAY A., THERESA C., E.B.,
*Appellees*.

No. 1 CA-JV 13-0308
FILED 07-24-2014

Appeal from the Superior Court in Maricopa County
No. JD508247
The Honorable Peter A. Thompson, Judge

**AFFIRMED**

COUNSEL

Gregan & Associates, Mesa
By Lawton Connelly
*Counsel for Appellants*

Law Office of Janet S. Story, Scottsdale
By Janet S. Story
*Appellees Jay A. and Theresa C.*

---

[1] Pursuant to S.B. 1001, Section 157, 51st Leg., 2nd Spec. Sess. (Ariz. 2014) (enacted), the Department of Child Safety is substituted for the Arizona Department of Economic Security in this matter. *See* ARCAP 27.

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Andrew W. Gould joined.

---

**P O R T L E Y**, Judge:

¶1        David and Michelle F. ("Appellants") appeal an order affirming the placement of their dependent great-grandson ("E.B.") with foster parents, Jay A. and Theresa C. ("Foster Parents").  For the following reasons, we affirm.

### FACTS[2] AND PROCEDURAL HISTORY

¶2        E.B., a two-and-a-half year old child, was placed with Foster Parents when he was three days old by Child Protective Services within the Arizona Department of Economic Security[3] ("ADES"), and has bonded with Foster Parents.  Appellants filed a motion to intervene in January 2013 in an attempt to have E.B. placed with them.  Although the court allowed them to intervene, the court denied Appellants' request to become the child's placement.[4]

¶3        Subsequently, in April 2013, E.B.'s parents had their parental rights terminated.  Later that month, Appellants again moved to have the child placed in their care.  ADES reversed its earlier position and supported placing E.B. with Appellants, who resided in Montana and had adopted one of E.B.'s two siblings.  The juvenile court, however, denied

---

[2] Because Appellants failed to cite the record in their opening brief in violation of ARCAP 13(a)(4), we rely on our review of the record and the citations in the answering brief.  We view the evidence in the light most favorable to sustaining the juvenile court's ruling. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21, 119 P.3d 1034, 1038 (App. 2005).

[3] The Department of Child Safety ("DCS") has replaced ADES.  Because this case preceded the creation of DCS, we will refer to the agency as ADES.

[4] ADES has known since November 2011 that Appellants wanted to be considered as a placement for E.B.

the request — ruling that the best interests of the child favored keeping him with Foster Parents. This appeal followed.[5]

## DISCUSSION

### Denial of Placement with Appellants

**¶4** Appellants argue that the juvenile court abused its discretion by denying their request to have E.B. placed with them. They contend that: the court did not have good cause for its order; the order was contrary to the best interest of the child; and the order was contrary to Arizona's preference to place children with relatives. We disagree.

**¶5** We review child placement orders for an abuse of discretion. *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 404, ¶ 8, 187 P.3d 1115, 1117 (App. 2008). The juvenile court has "substantial discretion when placing dependent children because the court's primary consideration in dependency cases is the best interest of the child." *Id.* We will not reweigh the evidence because the court, as trier of fact, is in the "best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings." *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4, 53 P.3d 203, 205 (App. 2002). Rather, we accept the court's findings of fact unless no reasonable evidence supports it. *Id.*

**¶6** In ruling on the placement motion, the juvenile court found that E.B. had bonded with Foster Parents. The court was also concerned that E.B., who had significant special needs,[6] might not have access to needed services if placed with Appellants in Montana, and moving E.B. "based on tenuous information presented . . . would be irresponsible at

---

[5] Appellants filed a timely notice of appeal, but the juvenile court struck the notice for failing to include language required by Arizona Rule of Procedure for the Juvenile Court ("Rule") 104(B). After our intervention, the court granted Appellants' motion to extend time to file amended notice of appeal nunc pro tunc.

[6] E.B. suffers from cerebral palsy, dysphasia, gastroesophageal reflux, disorder of metabolism, congenital ptosis, sensory issues, and behavioral changes. He has regular physical therapy, occupational therapy, and feeding therapy from specialists. He wears a protective helmet, and is fed through a gastrostomy tube. He also sees a pediatric neurologist, pediatric gastroenterologist, pediatric surgeon, pediatric ophthalmologist, metabolic specialist, and pediatrician for developmental evaluation.

best." Consequently, the court ruled that it was in E.B.'s best interest to remain with Foster Parents.

¶7         The record supports the ruling of the juvenile court. First, although Appellants wanted to care for E.B., their Montana community[7] had no pediatricians, and the nearest pediatric specialty clinic was some fifty miles away. Although specialists were available at that clinic when flown in from Washington, E.B.'s pediatrician expressed concern for the care of her patient if medical and therapeutic care was not more readily available. The local community had a hospital, but it functioned as an emergency room and patients were taken by air ambulance for specialized treatment. Moreover, there was no evidence that Appellants could ensure that E.B. could continue to have the approximately twenty-two monthly appointments he had in order to meet his medical and emotional needs.

¶8         Second, there was no evidence to assure the juvenile court that E.B. would be seen timely by all necessary medical and related providers in Montana. E.B.'s pediatrician and physical therapist testified, and explained their concerns that, if there were any delays in service, the child's progress would be set back and medical complications could result. In fact, the child's pediatrician opined that it would be in E.B.'s best interest medically to remain in Phoenix.

¶9         Third, Dr. Aldolph Silberman, psychologist, expressed concern with E.B. overreacting in a new environment and developing reactive attachment disorder, which could affect future relationships. The testimony was similar to the pediatrician's testimony — expressing concern about the child's sensory disorder and adjusting to new caregivers and providers.

¶10         Fourth, although the report from the adoption specialist was an exhibit and suggested that E.B. be placed with Appellants, the court also had other evidence to consider. In addition to testimony from the pediatrician and physical therapist, the court had testimony from Dr. Silberman, who recommended that E.B. stay with Foster Parents, and

---

[7] Although Appellants argue that the evidence shows that they decided to permanently reside in Arizona, the great-grandmother testified that if they were granted custody, they would return to Montana. Moreover, their testimony focused on securing medical treatment for E.B. in Montana. Because we will not reweigh the evidence, there is substantial support in the record for the juvenile court's finding.

disagreed that E.B. could easily bond with Appellants merely because he had bonded with Foster Parents. The court had to resolve the evidentiary conflicts, did so, and we will not interfere with that ruling because there is evidence to support it. *See Jesus M.*, 203 Ariz. at 282, ¶ 12, 53 P.3d at 207.

**¶11**       Finally, the court considered E.B.'s best interests. Although he had a biological sister living with Appellants, the ruling considered all relevant factors, including the "interaction and interrelationship of the child with the child's potential placement, the child's siblings and any other person who may significantly affect the child's best interest." The court, however, had to determine the weight to be given to the factors, and we will not reweigh the evidence. *See id.* at 280, ¶ 4, 53 P.3d at 205.

**¶12**       Appellants also argue that Arizona Revised Statutes ("A.R.S.") section 8-514(B)[8] indicates a preference of placing dependent children with extended families before foster parents. Although placement preference with a grandparent or other relative is one factor in the best interest of the child analysis, the statute is not mandatory, and does not require the exclusion of foster parents who are bonded with a child. *See Antonio P.*, 218 Ariz. at 403-05, ¶¶ 1, 12, 187 P.3d at 1116-18 ("We conclude that the preferences for placement contained in [A.R.S § 8-514(B)] do not mandate placing a child with a person with an acceptable higher preference if the juvenile court finds it in the child's best interest to be placed with someone with a lower preference."). Because the court has to consider what is in a child's best interest, i.e., the "needs of the child," the child's best interest trumps any placement preference.[9] *See id.* at 405, ¶ 10, 187 P.3d at 1118.

**¶13**       Here, the juvenile court held a hearing, considered all the evidence presented and made its ruling. There is substantial evidence in the record supporting the denial of moving E.B. to Appellants. Accordingly, we find no abuse of discretion.

---

[8] We cite to the current version of the applicable statutes absent changes material to this decision.

[9] Although ADES has a policy to place dependent children with relatives when appropriate, the policy does not trump statute and case law after consideration of all relevant factors to determine a child's best interest.

**Motions to Intervene**

¶14　　　　Appellants also contend that the juvenile court erred by denying their motion to intervene in June 2012.  We will not address the ruling.  The order denying their motion to intervene was a final, appealable order.  *See Bechtel v. Rose*, 150 Ariz. 68, 71, 722 P.2d 236, 239 (1986).  Because they did not timely file an appeal from that order, they cannot now appeal the issue.  *See* Ariz. R. Juv. P. 104(A) ("A notice of appeal shall be filed . . . no later than 15 days after the final order is filed with the clerk."); *see also Wendling v. Sw. Sav. & Loan Ass'n*, 143 Ariz. 599, 601, 694 P.2d 1213, 1215 (App. 1984) ("This court lacks jurisdiction to review matters not contained in the Notice of Appeal.").

¶15　　　　Similarly, we will not consider Appellants' challenge to the ruling granting Foster Parents' motion to intervene.  Given our resolution of the placement issue, the challenge to the ruling granting Foster Parents' motion to intervene is moot.

**Attorneys' Fees on Appeal**

¶16　　　　Appellants and Foster Parents each request attorneys' fees and costs pursuant to A.R.S. § 25-324.  We deny Appellants' request because they did not prevail on appeal.  We also deny the request by Foster Parents because there is no information in the record concerning the parties' relative financial resources.  *See* A.R.S. § 25-324.

**CONCLUSION**

¶17　　　　For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh

6