NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

J.S., E.K., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, *Appellee*.

No. 1 CA-JV 15-0051
FILED 8-18-2015

Appeal from the Superior Court in Maricopa County
No. JD23895
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll Esq., Scottsdale
By Denise L. Carroll
*Guardian ad litem for Appellants*

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Margaret H. Downie joined.

---

**W I N T H R O P,** Judge:

**¶1**　　　　The guardian ad litem ("GAL") for biological siblings J.S. and E.K. (collectively, "the children") appeals the juvenile court's order denying a motion for a change in the permanent placement of J.S. from a prospective adoptive placement to the maternal great uncle and aunt ("the Maternal Relatives") with whom E.K. has been temporarily placed. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY[1]**

**¶2**　　　　In June 2013, the Arizona Department of Economic Security ("ADES")[2] removed J.S. from his biological parents' care three days after he was born because tests indicated his exposure at birth to methamphetamine, and the biological parents admitted to ongoing drug abuse. J.S. was placed in the care of his maternal great-grandmother, and the juvenile court found J.S. dependent as to the biological parents, with a case plan of family reunification concurrent with severance and adoption.

**¶3**　　　　In October 2013, ADES moved for a change in physical custody after the maternal great-grandmother advised ADES that her daughter, J.S.'s maternal grandmother,[3] planned to live in the home while

---

[1]　　　We view the evidence and the reasonable inferences therefrom in the light most favorable to sustaining the juvenile court's decision. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18, 219 P.3d 296, 303 (App. 2009).

[2]　　　In May 2014, Child Protective Services was removed as an entity within ADES and replaced by the Department of Child Safety, an entity outside of ADES. We refer to the parties as they existed at the initiation of the proceedings.

[3]　　　The maternal grandmother and the maternal great uncle are half-siblings.

on parole. The juvenile court approved the change in physical custody, and J.S. was placed with a non-relative foster parent after neither the biological parents nor the maternal great-grandmother could identify any other family members as a prospective placement to care for J.S. The court found the foster placement was "the least restrictive consistent with the needs of the child."

¶4        In January 2014, the juvenile court approved a change in the case plan for J.S. to severance and adoption, and ADES moved to terminate the parent-child relationship between the biological parents and J.S. The court held a contested severance hearing on August 5, 2014, and took the matter under advisement. On September 9, 2014, the Maternal Relatives contacted ADES and requested that J.S. be permanently placed in their care.[4] In late September 2014, the juvenile court terminated the parent-child relationship between the biological parents and J.S.[5]

¶5        During staff meetings in September and October 2014, ADES concluded that removing J.S. from the prospective adoptive foster parent with whom he had lived for approximately one year and bonded was not in his best interest; accordingly, ADES decided not to pursue the Maternal Relatives as a permanent placement for J.S. On October 22, 2014, J.S.'s case was transferred to an adoption case manager. J.S. had been in the prospective adoptive parent's care since mid-October 2013.

¶6        The case plan of adoption was affirmed by the juvenile court at a November 5, 2014 report and review hearing, at which the court ordered ADES to send a formal denial letter to the Maternal Relatives. In a "Kinship Placement Notification" letter dated November 7, 2014, ADES informed the Maternal Relatives that, "[a]fter careful assessment and consideration," ADES would not recommend to the juvenile court that J.S. be placed in their home because it was in J.S.'s best interest to remain at his prospective adoptive placement, a stable environment where he had already lived for more than twelve months. Although the letter offered the Maternal Relatives the opportunity to respond, the Maternal Relatives did

---

[4]     The Maternal Relatives asserted they first learned J.S. had left the care of his great-grandmother at a family gathering in August 2014.

[5]     The biological parents did not contest termination of their parental rights and are not parties to this appeal.

not file a grievance with ADES regarding its decision[6] or immediately request a review of the decision by the juvenile court judge assigned to J.S.'s case, an option that was clearly identified in the notification letter.[7]

**¶7** In mid-November 2014, E.K. was born to the same biological parents as J.S. ADES took custody of E.K. after she tested positive at birth for exposure to methamphetamine, and she was placed in the temporary physical custody of the Maternal Relatives.

**¶8** On November 24, 2014, ADES conducted a kinship home assessment or "home study" with the Maternal Relatives concerning E.K. At that time, the Maternal Relatives expressed to the family support specialist conducting the assessment their interest in adopting J.S. if the foster placement was unable to do so, although they acknowledged "we understand that is the only home he has ever known." Based on her initial assessment, the family support specialist recommended that E.K. continue to be temporarily placed with the Maternal Relatives.[8]

---

[6] Attached to the notification letter from ADES was a form entitled "Kinship Care Recommendation, Client Grievance – Level I." The form explained that by filing the grievance, the applicant has "taken the first step *(Level I)* of the formal client grievance process." The grievance form did not specify a deadline by which the Maternal Relatives were required to file a grievance, or contain further information concerning the criteria for any such grievance, although it advised that the client "will be contacted within ten (10) working days of the date it is received by the agency to discuss [the client's] concerns."

[7] The Maternal Relatives asserted they did not receive the November 7 letter as initially sent by ADES. Instead, they testified they first learned J.S. would not be placed with them during the "first home visit" conducted by ADES's case manager, and later received a copy of the letter in an email sent in mid-December 2014. The address listed on the November 7 letter is the correct mailing address for the Maternal Relatives.

[8] The only immediate concern noted at the time of the assessment was the lack of a fence around the home's swimming pool, which the family support specialist characterized as "a significant risk." The Maternal Relatives asserted, however, that they planned to install a fence around the pool "in the near future." As of January 30, 2015 (the date of the hearing on

¶9         On January 29, 2015, the children's GAL filed a motion to change the permanent placement of J.S. to the Maternal Relatives in order for the siblings to be raised together.  J.S.'s prospective adoptive placement filed a response, requesting that J.S. remain in her care.[9]  J.S.'s prospective adoptive placement stated she would allow visits with E.K. in order to facilitate a sibling relationship, but argued removing J.S. from her home would be emotionally harmful to J.S. due to their significant bond.

¶10         The following day, January 30, the juvenile court conducted a hearing on the GAL's motion and heard testimony from the children's ADES case manager and the Maternal Relatives.  The case manager testified the Maternal Relatives had contacted ADES in September 2014, requesting they be the permanent placement for J.S.  During ADES staff meetings in September and October 2014, ADES determined J.S. was already bonded to his prospective adoptive placement, and it was not in the best interest of J.S. to change the placement to the Maternal Relatives.  The Maternal Relatives both testified that, although they had not yet met J.S., they wished to care for him and raise the children together.  They also acknowledged the possibility that E.K. would not remain in their care through adoption.

¶11         After taking the matter under advisement, the juvenile court denied the GAL's motion, finding that changing the placement of J.S. would disrupt the permanency that had already been established with his current placement and would not allow for prompt permanency with the Maternal Relatives.  The court also noted the Maternal Relatives "have no established relationship with the child [J.S.]; they have not met the child."

¶12         The children's GAL timely appealed.[10]  We have appellate jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution,

---

the motion for a change in the placement of J.S.), the fence had not been installed.

[9]         By this time, J.S.'s foster parent had filed an adoption petition, and the adoption hearing was set for February 5, 2015.

[10]         In her motion, the GAL also requested that the juvenile court order ADES to provide visits between the children.  The juvenile court ordered that it would leave "details for sibling contact" to ADES's discretion.  The children's GAL does not challenge that ruling on appeal.

Arizona Revised Statutes ("A.R.S.") section 8-235(A),[11] and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

**¶13**　　　On appeal, the children's GAL argues ADES failed to comply with Arizona statutes – specifically, A.R.S. §§ 8-514.03 and 8-514(B) - and generally contests the juvenile court's decision to allow J.S. to remain with his prospective adoptive placement.[12]

**¶14**　　　The juvenile court has broad discretion in determining the placement of a dependent child. *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 404, ¶ 8, 187 P.3d 1115, 1117 (App. 2008). As the trier of fact, the juvenile court is in the best position to weigh the evidence, observe the parties, judge witnesses' credibility, and resolve disputed facts. *Jordan C.*, 223 Ariz. at 93, ¶ 18, 219 P.3d at 303 (citation omitted). In determining placement, the juvenile court's primary consideration is the best interest of the child. *Antonio P.*, 218 Ariz. at 404, ¶ 8, 187 P.3d at 1117.

**¶15**　　　In general, we review the juvenile court's determinations for an abuse of discretion. *Maricopa Cnty. Juv. Action No. JD-6236*, 178 Ariz. 449, 451, 874 P.2d 1006, 1008 (App. 1994). A juvenile court abuses its discretion if its findings of fact are clearly erroneous or unsupported by reasonable evidence. *See generally Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010); *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 2, 982 P.2d 1290, 1291 (App. 1998). To the extent our review involves the interpretation of statutes, however, we are not bound by the juvenile court's conclusions, but conduct a *de novo* review. *See In re Sheree M.*, 197 Ariz. 524, 525, ¶ 4, 4 P.3d 1067, 1068 (App. 2000). This court interprets statutes according to their plain meaning. *Brunet v. Murphy*, 212 Ariz. 534, 539, ¶ 20, 135 P.3d 714, 719 (App. 2006).

---

[11]　　　We cite the current version of the statutes if no revisions material to our decision have occurred since the relevant dates.

[12]　　　The GAL alleges other issues in her opening brief, but fails to provide any argument or legal support regarding these issues. Accordingly, these arguments are waived on appeal. *See* ARCAP 13(a)(7)(A)-(B) (requiring an appellant to support contentions on appeal with reasons, citations to legal authority, and references to the record); *see also State v. Guytan*, 192 Ariz. 514, 520, ¶ 15, 968 P.2d 587, 593 (App. 1998) (recognizing that arguments not raised in an opening brief are waived).

    I.       *Compliance With A.R.S. § 8-514.03*

**¶16**         The GAL argues that, by rejecting the Maternal Relatives as a placement before conducting an evaluation of their home, ADES did not comply with A.R.S. § 8-514.03. Even assuming *arguendo* the GAL has not waived this argument by failing to raise it in the juvenile court, the juvenile court did not abuse its discretion in denying the motion for a change to a kinship placement.

**¶17**         Pursuant to A.R.S. § 8-514.03(B), when presented with a kinship applicant, ADES "shall determine if the applicant is able to meet the child's health and safety needs by conducting one or more home visits and interviewing the applicant." If ADES determines placement of a child with a kinship applicant is not in the child's best interest, ADES "shall provide written notification to the applicant within fifteen business days. The notice shall include the specific reason for denial, the applicant's right to appeal and the process for reviewing the decision." A.R.S. § 8-514.03(C).

**¶18**         ADES acknowledges that it failed to conduct a kinship home assessment with the Maternal Relatives before determining placement of J.S. with them was not in J.S.'s best interest, but characterizes this as a "technical error." On this record, we agree. ADES's reasons for denying the Maternal Relatives as a placement for J.S. stemmed from its determination that it was in J.S.'s best interest to remain with his prospective adoptive parent, a stable environment meeting his health and safety needs and where he had already lived for approximately one year. As a practical matter, an investigation of the Maternal Relatives' home would not have changed the reasons for ADES's denial, as evidenced by the fact that, shortly afterward, ADES conducted a kinship home assessment of the Maternal Relatives and approved them as a kinship placement for E.K., but continued to maintain that placement with J.S.'s bonded prospective adoptive parent was in that child's best interest.[13]

---

[13]     The record is unclear whether ADES timely notified the Maternal Relatives of ADES's final decision not to place J.S. with them. J.S.'s case was transferred to the adoption case manager on October 22, the juvenile court on November 5 ordered ADES to send the denial letter, and the denial letter was dated and ostensibly sent on November 7, but apparently not received until mid-December 2014. Nonetheless, even if ADES failed to provide written notification to the Maternal Relatives "within fifteen business days" as required by A.R.S. § 8-514.03(C), the November 7 denial letter complied with A.R.S. § 8-514.03(C) in all other respects, and any lack of timeliness

More importantly, at the January 30 hearing on the placement motion, the juvenile court had the kinship home assessment of the Maternal Relatives involving E.K. before it; nevertheless, the court determined J.S.'s best interest was served by his continued placement with the prospective adoptive parent. Because the juvenile court had before it the very information A.R.S. § 8-514.03(B) is designed to generate, ADES's error did not result in prejudice. *See Creach*, 189 Ariz. at 214, 941 P.2d at 226.

## II. Compliance With A.R.S. § 8-514(B)

**¶19** The GAL also argues the juvenile court did not comply with A.R.S. § 8-514(B) and abused its discretion in finding the proposed change in placement was not in J.S.'s best interest. Specifically, the GAL maintains that, in making its decision, the juvenile court should have relied on the placement preference outlined in subsections (3) and (4) of A.R.S. § 8-514(B) rather than the existing bond between J.S. and his prospective adoptive placement.

**¶20** Pursuant to A.R.S. § 8-514(B), ADES "shall place a child in the least restrictive type of placement available, consistent with the needs of the child." As relevant here, subsections (3) and (4) of A.R.S. § 8-514(B) delineate the preferred order for the placement of a child, listing "kinship care with another member of the child's extended family" just before placement "[i]n licensed family foster care."

**¶21** The order of placement is not a mandate, however, but a preference. *Antonio P.*, 218 Ariz. at 405, ¶ 12, 187 P.3d at 1118 ("The statute requires only that the court include placement preference in its analysis of what is in the child's best interest."). In making a placement decision, the court's primary consideration must be the best interest of the child. *Id*. at 404, ¶ 8, 187 P.3d at 1117; Ariz. R.P. Juv. Ct. 36 ("The [juvenile] rules should be interpreted in a manner designed to protect the best interests of the child, giving paramount consideration to the health and safety of the child.").

---

was, on this record, harmless. *See Creach v. Angulo*, 189 Ariz. 212, 214, 941 P.2d 224, 226 (1997) ("To justify the reversal of a case, there must not only be error, but the error must have been prejudicial to the substantial rights of the party." (citation omitted)). Moreover, we reject the GAL's suggestion that the statute requires ADES to conduct all necessary investigation and provide written notice to the applicant within fifteen days of an application. Subsection (C) requires "written notification to the applicant within fifteen business days" *of ADES's determination*.

¶22          The record supports the conclusion the juvenile court properly considered the statutory placement preferences in making its decision.  At the January 30 hearing, the court acknowledged the need "to balance permanency for the child with priority of placements that promote family relationships" under A.R.S. § 8-514(B).  Nevertheless, after considering the facts and the applicable law, the court concluded that "[c]hanging placement of [J.S.] at this time disrupts the permanency [J.S.] has established with the family to whom he has become attached for the past fifteen (15) months, and does not allow for prompt permanency with the [Maternal Relatives]."

¶23          Reasonable evidence supports the juvenile court's finding that changing J.S.'s placement did not serve his best interest.  *See generally Matthew L.*, 223 Ariz. at 549, ¶ 7, 225 P.3d at 606.  ADES placed J.S. with the prospective adoptive foster placement in October 2013 after being informed by the biological parents and maternal great-grandmother that they could not identify any other family members as a prospective placement for J.S.  At that time, the juvenile court found the placement was "the least restrictive consistent with the needs of the child."  J.S. lived with his foster placement for approximately eleven months before the Maternal Relatives contacted ADES and for over fifteen months by the time of the January 30 hearing.  Over that time, ADES's case manager "spent numerous hours at the current placement's home" evaluating the relationship between J.S. and the foster placement, and concluded the foster placement was secure, stable, and loving, and able to meet J.S.'s needs.  J.S. appeared happy, looked to his foster mother for reassurance, and was bonded with his placement.  Additionally, the foster placement had expressed a willingness to allow J.S. to have a relationship with E.K.  The case manager opined that J.S. should remain with his foster placement, who had petitioned to adopt him.

¶24          Although the Maternal Relatives also appeared willing and able to meet J.S.'s needs and facilitate sibling contact, they had never met J.S.  Further, although the Maternal Relatives had been approved as the temporary placement for E.K., there was no guarantee her permanent placement would be with the Maternal Relatives because the biological parents' dependency proceeding was still pending.  Although we recognize the importance of preserving family integrity, *see William Z. v. Ariz. Dep't of Econ. Sec.*, 192 Ariz. 385, 387-88, ¶ 11, 965 P.2d 1224, 1226-27 (App. 1998), reasonable evidence supports the juvenile court's finding that J.S. had become attached to his prospective adoptive placement, and that his best interest dictated that such placement remain in effect.

## CONCLUSION

**¶25**        For the foregoing reasons, we affirm the juvenile court's order denying the GAL's motion to change J.S.'s placement.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama