NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

KRISTINA H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.H., S.S., *Appellees*.

No. 1 CA-JV 21-0159
FILED 9-28-2021

---

Appeal from the Superior Court in Maricopa County
No. JD32788
The Honorable Karen A. Mullins, Judge (Retired)

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Brian Y. Furuya and Judge Michael J. Brown joined.

---

H O W E, Judge:

¶1          Kristina H. ("Mother") appeals the juvenile court's order terminating her parental rights to D.H., born in 2016, and S.S., born in 2018. For the following reasons, we affirm.[1]

## FACTS AND PROCEDURAL HISTORY

¶2          We view the facts in the light most favorable to sustaining the juvenile court's order. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 2 ¶ 2 (2016). In 2016, Mother was pregnant and living at a homeless shelter that did not accept children. In June 2016, the Department of Child Safety became involved with Mother after she had given birth to D.H. At the time Mother was ready to be discharged from the hospital with D.H., she had not yet resolved her housing situation; the Department removed D.H., placed him in a licensed foster home, and petitioned to have D.H. declared a dependent child.

¶3          In November 2016, Mother had found housing and the Department returned D.H. to her while monitoring the case. While D.H. was in her care, the Department visited Mother's apartment twice, both times finding its conditions unsanitary and unsafe, and learned that Mother would soon be evicted. The Department also learned that Mother had not taken D.H. for his immunizations or check-ups. The Department thus moved to place D.H. in his previous foster home. The juvenile court granted the motion but did not change the case plan from family reunification.

¶4          In May 2017, Mother underwent a psychological evaluation and was diagnosed with multiple mental-health disorders, including Borderline Intellectual Functioning, Mixed Personality Disorder with Antisocial, Negativistic, and Paranoid Features, Alcohol-Use Disorder, and Cannabis-related Disorder—Spice Type. As a result, the evaluating

---

[1]          Each child has a different father, neither of whom are subject to this appeal.

psychologist recommended various services to her including behavioral therapy, parenting training, and a best interests/bonding assessment. Mother attended mental-health services for depression and later admitted that she stopped taking her prescription medication for depression one month after it was prescribed. She has reported a history of self-harm and a suicide attempt.

¶5 In August 2018, Mother gave birth to S.S.; by that time, she had not participated in the recommended therapy sessions. In September 2018, the Department removed S.S. from Mother's care because she was not participating in services and was neither employed nor had stable housing. The Department eventually placed S.S. at a different foster home after unsuccessfully trying to place him with D.H., Mother's friend, and a relative.

¶6 Mother eventually attended four therapy sessions out of the recommended number of eight to twelve. She cancelled or failed to show up to most sessions and the services closed. Mother was encouraged to participate in therapy again in 2019 and 2020, but after several sporadic attempts, she stopped attending. Mother underwent a psychiatric evaluation in January 2019 and was diagnosed with other mental-health disorders, including Dysthymic Disorder and Borderline Personality Disorder. In September 2019, Mother participated in a substance-abuse assessment and random drug testing. She tested positive for marijuana during random drug tests, and she did not have a medical marijuana card.

¶7 Mother failed to complete the four parent-aide programs. She also failed to attend scheduled visitations with her children; she either failed to show up to visits or canceled them, citing as reasons illness, running errands, looking for an apartment, attending an appointment, or failing to bring necessary supplies for the children. In addition, Mother did not improve her living situation, continuing to depend on S.S.'s father and not earning any income. In 2020, Mother also did not request to visit the children on Christmas or give the children gifts.

¶8 Mother attended more than 15 hearings with her attorney and did not challenge or object to the children's placement. In October 2020, the case plan changed to severance and adoption. The Department moved to terminate Mother's parental rights under the 15 months in out-of-home placement grounds. In March 2021, during the termination adjudication hearing, Mother entered a no-contest plea because she believed it was in her children's best interests.

¶9 Evidence presented at the hearing showed that D.H. and S.S. visited each other when they visited with their parents. The children were both attached to their foster families and have met their foster families' extended family members. D.H. reportedly asked his foster parent when he will be able to change his last name to his foster parent's last name. S.S. has not known any other home apart from his foster family's.

¶10 The juvenile court terminated Mother's parental rights, finding that the Department proved by clear and convincing evidence that termination was proper on the 15 months in out-of-home placement grounds. Specifically, the children were placed in out-of-home care for 15 months or longer, the Department made a "diligent effort to provide appropriate reunification services," and Mother was unable to ameliorate the factors that led to the removal of her children. The court concluded that Mother is "substantial[ly] like[ly]" incapable of "exercising proper and effective parental care and control in the near future." The court also found, by a preponderance of the evidence, that termination was in the children's best interests because adoption plans were in place. Mother timely appeals.

**DISCUSSION**

¶11 To terminate parental rights, the juvenile court must find by clear and convincing evidence the existence of at least one statutory ground under A.R.S. § 8−533 and by a preponderance of the evidence that termination would be in the child's best interests. A.R.S. § 8–533(B); Ariz. R. P. Juv. Ct. 66(C); *Jennifer S. v. Dep't of Child Safety*, 240 Ariz. 282, 286 ¶ 15 (App. 2016). When a parent pleads no contest, the juvenile court determines "whether a factual basis exists" to support termination. Ariz. R. P. Juv. Ct. 66(D)(1)(c). A juvenile court's termination determination is reviewed for an abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.,* 207 Ariz. 43, 47 ¶ 8 (App. 2004). Because the juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts, *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (App. 2004), we will affirm a termination decision unless no reasonable evidence supports it, *Xavier R. v. Joseph R.*, 230 Ariz. 96, 100 ¶ 11 (App. 2012).

¶12 Mother challenges only the juvenile court's finding of best interests; she does not challenge the statutory grounds for termination. The Department argues that Mother waived her right to challenge this issue on appeal. The Department also argues that even without considering waiver, evidence supports the juvenile court's finding of best interests. We need not reach the issue of waiver because the evidence supports the juvenile court's best interests finding.

¶13         Termination of parental rights is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018). Whether a child will benefit from termination requires considering whether the current placement is meeting the child's needs, an adoption plan is in place, and if the child is adoptable. *Demetrius L.*, 239 Ariz. at 1, 3–4 ¶ 12. Other primary considerations include the child's stability and security, *id.* at 4 ¶ 15, the parent's prospects for rehabilitation, *Alma S.*, 245 Ariz. at 151 ¶ 15, as well as the child's health and safety, Ariz. R. P. Juv. Ct. 36. The interests of the parent and child diverge once the juvenile court has found one of the statutory grounds for termination by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 286 ¶ 35 (2005). Thus, the best interests analysis "focuses primarily upon the interests of the child, as distinct from those of the parent," *id.* at 287 ¶ 37, and the juvenile court considers the totality of the circumstances, *Timothy B. v. Dep't of Child Safety*, 250 Ariz. 139, 145 ¶ 20 (App. 2020).

¶14         Reasonable evidence supports the juvenile court's finding of best interests. The respective foster families of D.H. and S.S. are currently meeting their needs and both children are doing well. D.H.'s foster family has provided for him since 2017 and desires to adopt him. S.S.'s foster family has provided for him since 2018 and desires to adopt him. Both D.H. and S.S. are adoptable. The children's current foster families offer stability and security. In fact, the children are attached to them and would be harmed if the parent-child relationship continued because Mother has failed to secure stable housing and employment, and to make an effort to better herself to continue the relationship with her children. Mother's failure to attend visits or to participate in and complete recommended services has demonstrated that her prospects for rehabilitation are low. If Mother's parental rights are not terminated, the children will remain in foster care, delaying permanency. The juvenile court therefore did not err in finding that termination was in the children's best interests.

¶15         Mother nonetheless argues that the court discounted the fact that D.H. and S.S. are in different foster homes. In doing so, she points to the Sibling Information Exchange Program under A.R.S. § 8–543 and believes that her children may not have post-adoption contact. She also argues that the Department could have justified exceeding the capacity of the foster home to place the siblings together. Because the juvenile court's primary consideration is the best interests of the child, it has substantial discretion when placing dependent children. *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 404 ¶ 8 (App. 2008). The juvenile court did not discount that the children are in separate foster homes. Rather it knew and

acknowledged this, and nonetheless found best interests to exist. While placing siblings together is an important consideration, other factors such as stability, security, health, and safety are paramount. *See Demetrius L.*, 239 Ariz. at 3–4 ¶ 15; *see also* Ariz. R. P. Juv. Ct. 36. The juvenile court also found that they are in the least restrictive placement. *See* A.R.S. § 8–513(B).

**¶16**        Furthermore, while parents who are adjudicated unfit maintain some interest in their child's care and custody, the importance of this interest is substantially reduced if the court severs parental rights based on statutory grounds. *Kent K.*, 210 Ariz. at 286 ¶ 35. When the court considers the best interests of a child, the court "must balance this diluted parental interest against the independent and often adverse interests of the child in a safe and stable home life." *Id.* Therefore, the separation of siblings, while not ideal, is not Mother's responsibility.

**¶17**        Because reasonable evidence supports the factual basis underlying the juvenile court's finding of best interests, the court did not abuse its discretion.

## CONCLUSION

**¶18**        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA