NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LINSAY A., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, K.R., A.H., J.V., *Appellees*.

No. 1 CA-JV 21-0191
FILED 10-28-2021

Appeal from the Superior Court in Maricopa County
No. JD532407
The Honorable Jeffrey A. Rueter, Judge

**AFFIRMED**

COUNSEL

Maricopa County Interim Public Advocate, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge David B. Gass delivered the decision of the court, in which Presiding Judge D. Steven Williams and Judge James B. Morse Jr. joined.

---

**G A S S**, Judge:

¶1          Mother appeals the superior court's order terminating her parental rights to K.R., A.H., and J.V., her biological children. Because reasonable evidence supports the superior court's order, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2          This court views the evidence, and reasonable inferences to be drawn from it, in the light most favorable to affirming the superior court's decision. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002).

¶3          The Department of Child Safety (DCS) took temporary custody of the children after maternal grandmother reported she found a glass pipe and a white crystal substance inside mother's purse. Maternal grandmother found mother's purse beneath J.V.'s car seat and within the children's reach. When officers arrived and searched mother's home, mother was gone, she had left the children, and she did not respond to any calls.

¶4          DCS placed K.R. and A.H. with maternal grandmother and her husband, with whom they had "lived on and off" for most of their lives. DCS initially placed J.V.—eleven months old at the time—with father. J.V.'s father refused to engage in the services DCS offered him so DCS removed J.V. DCS could not place J.V. with maternal grandmother and J.V.'s siblings because maternal grandmother was unable to handle such a young child while also caring for K.R. and A.H. Because no other family member could care for J.V., DCS placed J.V. in a licensed foster home.

¶5          DCS referred mother to Terros for substance abuse services, but Terros did not recommend services because mother did not fully disclose her history of substance abuse. Mother initially participated in drug testing, but she stopped testing in May 2019 and did not complete any substance abuse programs. Mother failed to establish "any significant period of sobriety." DCS also referred mother to counseling and a parent

aide. Mother often cancelled her counseling sessions—only completing three sessions—and twice unsuccessfully closed out the parent aide service.

**¶6** DCS filed a termination motion alleging—as to mother—chronic substance abuse and fifteen months out-of-home placement. *See* A.R.S. § 8-533.B.3, .8(c). DCS further alleged termination of parental rights was in the children's best interests because the adoptive placements were meeting each child's needs.

**¶7** The superior court held a contested termination hearing. At the hearing, the DCS case manager testified mother could not provide a "safe and stable environment" for the children because of her chronic substance abuse. Further, mother refused employment assistance and insisted on remaining self-employed, but she failed to provide proof of income. Because mother lacked financial resources, she could not take advantage of DCS's housing support. In short, mother did not modify her lifestyle to care for the children.

**¶8** In contrast, maternal grandmother and her husband were providing K.R. and A.H. with a "loving and nurturing home environment." K.R. and A.H. were "growing" and developing "healthy attachments" while also maintaining relationships with family. J.V. was making significant progress and appeared to be "active and happy" with the foster-home placement. Though maternal grandmother and her husband could not care for J.V., they "facilitat[ed] visits between all siblings." The case manager testified both placements were adoptive and termination would provide the children permanency and supportive homes.

**¶9** The superior court found DCS proved by clear and convincing evidence both statutory grounds for termination. The superior court also found termination was in the children's best interests because they "would be in a safe, stable environment free from substance abuse and with caregivers [who] are able to meet [their] needs."

**¶10** Mother timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 8-235.A, 12-120.21.A.1, and 12-2101.A.1.

**ANALYSIS**

**¶11** Because mother does not challenge the statutory grounds for termination, she has abandoned that argument. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017). Instead, mother argues the

superior court abused its discretion in making its best-interests determination because it discounted the separation of the children.

¶12 The superior court must find by a preponderance of the evidence termination is in the children's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 288, ¶ 41 (2005). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts[,]" this court will affirm an order terminating parental rights if supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009). The children's "interest in stability and security" must be the superior court's primary focus. *Alma S. v. Ariz. Dep't of Child Safety*, 245 Ariz. 146, 150, ¶ 12 (2018). Termination is in the children's best interests if either: (1) the children will benefit from termination; or (2) failing to terminate the parent-child relationship will harm the children. *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Because the superior court's primary consideration is the best interests of the children, it has substantial discretion when placing dependent children. *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 404, ¶ 8 (App. 2008).

¶13 The superior court did not ignore or discount the significance of placing the children in separate homes. It directly addressed this issue. The case manager testified DCS sought kinship placement for J.V., but no family member was able and "willing to provide a permanent stable home." Consistent with that evidence, the superior court found J.V. could not live with maternal grandmother and DCS could not obtain an alternative kinship placement for J.V. with the other children. The superior court considered the sibling relationships, specifically noting maternal grandmother facilitated and maintained the sibling relationships throughout the dependency. And both placements intended to continue facilitating those relationships after the termination and subsequent adoption.

¶14 Though placing siblings together is an important consideration, other factors such as stability, security, health, and safety are paramount. *See Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15 (2016); *see also* Ariz. R.P. Juv. Ct. 36. In that regard, by the time of the termination hearing, K.R. and A.H. had been in out-of-home placement with maternal grandmother for two years, and J.V. had "been placed in the licensed adoptive home for 13 months." The superior court found termination would benefit the children because they "would be in a safe, stable environment free from substance abuse and with caregivers that are able to meet the children's needs." And each placement intended to proceed to

adoption. *See Alma S.*, 245 Ariz. at 150, ¶ 13 (a child's prospective adoption can support a best-interests finding).

**¶15** Reasonable evidence, therefore, supports the superior court's best-interests finding. *See Jordan C.*, 223 Ariz. at 93, ¶ 18. Accordingly, the superior court did not abuse its discretion or discount J.V.'s placement in a separate home from the other children.

## CONCLUSION

**¶16** We affirm the superior court's order terminating mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA