NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DANNY G., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.G., *Appellees*.

No. 1 CA-JV 22-0001
FILED 6-2-2022

---

Appeal from the Superior Court in Maricopa County
No. JD 533843
The Honorable Cassie Bray Woo, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne W. Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee, Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Randall M. Howe and Judge James B. Morse Jr. joined.

---

**C A M P B E L L**, Judge:

¶1        Danny G. (Father) appeals the superior court's order terminating his parental rights to his minor child, Josh.[1] Finding that the court did not abuse its discretion, we affirm.

## BACKGROUND

¶2        Father and Ashley S. (Mother)[2] are the biological parents[3] of Josh, born in November of 2020. Due to Mother's substance use while pregnant, Josh was born substance-exposed, and he tested positive for amphetamine and methamphetamine. Josh began to suffer withdrawal symptoms and was admitted to the newborn intensive care unit, where he stayed for 12 days. Father visited Josh once in the hospital, but due to COVID restrictions and concerns about Father's substance abuse, he was not allowed to visit again.

¶3        Two days after Josh was born, Mother stopped communicating with the Department of Child Safety (DCS). DCS unsuccessfully attempted to locate Father. Because DCS could not locate or contact Josh's parents, it concluded that an in-home dependency was not possible. DCS also determined that two of Josh's paternal aunts were not adequate placements because one could not pass a background check and the other had medical impairments that would interfere with her ability to care for Josh. When Josh was discharged from the hospital, he was placed in the care of a licensed foster family.

---

[1]       We use a pseudonym to protect the child's identity.

[2]       The superior court terminated both Mother and Father's parental rights. Mother is not a party to this appeal.

[3]       Paternity of the child has not been established. Father testified that he was certain that he is the biological father.

¶4            In December 2020, DCS filed a Dependency Petition and Petition for Paternity and/or Child Support, alleging that Josh was dependent because of neglect by both Mother and Father. DCS specifically alleged that Father did not provide parental care for Josh and could not provide proper care because of his substance-abuse issues. Following a hearing in March 2021, the court found Josh dependent regarding both Mother and Father. The court found that Father neglected Josh because he had not established paternity, had not parented Josh, and was unable to provide parental care due to his substance abuse. The court determined foster care remained necessary for Josh's welfare.

¶5            Initially, the case plan was family reunification. In April, however, the Foster Care Review Board (the Board) recommended changing the case plan to severance and adoption because Mother and Father failed to resolve the issues causing Josh to be placed with his foster family. The Board found that neither parent attended visits with Josh, both avoided communicating with DCS, neither engaged in services, both failed to submit or provide negative drug tests, and neither had obtained treatment for their substance-abuse issues. Additionally, Father was arrested in May and was later sentenced to five years' imprisonment. At DCS's request, and over Mother and Father's objection, the court changed the plan to severance and adoption.

¶6            DCS moved to terminate the parent child relationship regarding both parents, arguing that Father abandoned Josh, had no contact with him, and was incarcerated for a period of five years. Mother moved for two home-study referrals for two step-relatives: Randi N., the mother of Josh's half-sister, and Rhonda T., Josh's step-grandmother. The court denied Mother's motion for a home-study referral for Randi because she was ineligible for a fingerprint card. Although she was also ineligible for a fingerprint card, the court granted the motion allowing a home study for Rhonda because she could petition for a good-cause exception. At the time of the termination hearing, the home study for Rhonda was still pending, and a DCS specialist testified that DCS would consider placing Josh with his step-grandmother "in good faith."

¶7            Following a contested termination hearing during which both parents and a DCS case worker testified, the superior court terminated Mother and Father's parental rights. The court found two grounds in A.R.S. § 8-533(B) were established to terminate Father's parental rights. *See* § 8-533(B)(1) (abandonment); (B)(4) (length of incarceration for a felony conviction). The court also found that terminating Father's parental rights

was in Josh's best interests because severance would benefit Josh and "[m]aintaining the parent-child relationship would be detrimental" to him.

**¶8**     Father timely appealed and we have jurisdiction pursuant to A.R.S. §§ 8-235(A) and 12-2101(A)(1).

## DISCUSSION

**¶9**     The superior court has "substantial discretion when placing dependent children because the court's primary consideration . . . is the best interests of the child." *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 404, ¶ 8 (App. 2008). "We review the placement orders of dependent children for an abuse of that discretion." *Id*. We review legal issues de novo. *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 579, ¶ 10 (2021).

**¶10**     Before the superior court terminates a parent's rights, it must find that termination is in the child's best interests by a preponderance of the evidence. *See* A.R.S. § 8–533(B); *Kent K. v. Bobby M.*, 210 Ariz 279, 281–82, 288, ¶¶ 7–8, 41 (2005). The focus of the court's best interests analysis is "the child's interest in stability and security." *Jessie D.*, 251 Ariz. at 583, ¶ 27 (quotations and citations omitted). The court considers "the totality of the circumstances existing at the time of the severance determination, including the child's adoptability." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). "Among the factors that the court may consider . . . are whether: 1) an adoptive placement is immediately available; 2) the existing placement is meeting the needs of the child[]; and (3) the [child is] adoptable." *Jessie D.*, 251 Ariz. at 583, ¶ 27 (quotations and citations omitted).

**¶11**     The superior court's best interests analysis "is separate from and preliminary to its determination of placement after severance." *Antonio M. v. Ariz. Dep't of Econ. Sec.*, 222 Ariz. 369, 370–71, ¶ 2 (App. 2009) (citations omitted). Once a parent's rights are terminated, a parent does not have standing to challenge a child's placement, unless the court's placement determination is "inextricably intertwined with the issue of [the child's] best interests to terminate [the parent's] rights." *See id*. ¶¶ 2–3.

**¶12**     Father argues that the superior court's adoption plan is "inextricably intertwined with the best interests analysis." He contends the court abused its discretion because it deviated from the "placement-

4

preference" outlined in A.R.S. § 8-514(B) without sufficient justification.[4] We disagree with Father's framing of the court's analysis.

¶13            Here, the superior court recognized that Josh's foster family was "an adoptive placement." The court found that Josh had been with his foster family since birth, the family was meeting all of his needs, and they had a "significant relationship" with him. The court determined that termination would benefit Josh because he would have a "safe and stable home, with appropriate supervision, free from substance abuse." And the court did not make any final placement determinations, nor did it rule out the possibility that Josh could be placed with his step-grandmother. In fact, the court acknowledged that DCS was investigating a "prospective family placement" and a referral for a home study for Josh's relative was pending.

¶14            Moreover, the superior court found that maintaining the parent-child relationship would be detrimental to Josh for reasons related to Father's conduct as outlined during the severance proceedings. The court found that Father did not maintain regular contact with Josh or develop a bond with him. Throughout much of the case, DCS could not locate him, and he did not engage in the recommended services. Additionally, Father began a five-year sentence in July 2021, during which time Father cannot parent Josh, nor can Josh reside with him. While Josh's foster family and the possibility of his adoption factored into the court's analysis, they were not the only considerations underlying the court's conclusion that termination was in Josh's best interest. Because the court's best interests analysis was not inextricably intertwined with any placement decision, Father does not have standing to challenge Josh's placement with his foster family.

---

[4]      Father also contends the adoption plan creates a risk of a lack of sibling contact with Josh's half-sister. Because we find that Father lacks standing to challenge where Josh lives and who ultimately adopts him, we need not address this argument.

## CONCLUSION

¶15       We affirm the superior court's order terminating Father's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:    AA