IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

ALEXANDER M., DOMINIC M., DANIEL M., NATALIE M. AND SAVANNAH M.,
*Petitioners,*

*v.*

THE HONORABLE LISA ABRAMS, COMMISSIONER OF THE SUPERIOR COURT
OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF PIMA,
*Respondent,*

*and*

ARIZONA DEPARTMENT OF ECONOMIC SECURITY, YVONNE M. AND ALEX M.
*Real Parties in Interest.*

No. CV-13-0169-PR
Filed July 14, 2014

Special Action from the Superior Court in Pima County
The Honorable Lisa Abrams, Commissioner
No. J188643
**VACATED**

Order of the Court of Appeals, Division Two
Filed May 7, 2013
**VACATED**

COUNSEL:

Nicholas Knauer (argued), Pima County Office of Children's Counsel,
Tucson, for Children

Thomas C. Horne, Attorney General, Phoenix, Laura J. Huff (argued),
Assistant Attorney General, Tucson, for Arizona Department of Economic
Security

JUSTICE BRUTINEL authored the opinion of the Court, in which CHIEF
JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, JUSTICE BERCH, and
JUSTICE TIMMER joined.

JUSTICE BRUTINEL, opinion of the Court:

**¶1**        We are asked to decide whether a juvenile court can delegate discretion to the Arizona Department of Economic Security ("ADES") to determine when it serves a dependent child's best interests to be returned to the child's parent or guardian.  We conclude that the juvenile court may not delegate its responsibility to independently determine whether reunification is in the child's best interests.

## I.  BACKGROUND

**¶2**        In June 2012, the juvenile court adjudicated Alexander M., Dominic M., Daniel M., Nathanial M., and Savannah M. (the "Children") dependent as to both of their parents.  The court ordered a case plan of family reunification but directed that the Children remain in out-of-home care.  The juvenile court vested "the minors' legal care, custody, and control" in ADES.

**¶3**        In April 2013, the juvenile court held a combined permanency and dependency review hearing.  At the hearing, ADES sought discretion, if the parents complied with the case plan, to reunify the Children with their parents when secure housing and in-home services were in place.  The Children objected, arguing that before they could be reunified with their parents, A.R.S. § 8-861 and Rule 59 of the Arizona Rules of Procedure for the Juvenile Court required the court to conduct a placement hearing to determine whether reunification would create a substantial risk of harm. ADES responded that a placement hearing was not required because neither the statute nor the rule applied to it.

**¶4**        The juvenile court rejected the Children's argument, ruling that ADES was not required to "file a written motion and request a hearing" before returning the Children to their parents.  But the court found that "the parents ha[d] failed to remedy the circumstances that cause[d] the [C]hildren to remain in out-of-home placement and that the minors cannot return to any parent without a substantial risk of harm to their mental, physical[,] or emotional health and safety."  Accordingly, the court ordered the Children's continued out-of-home placement and left the "minors' legal care, custody, and control" with ADES.

**¶5** Despite those findings and the Children's objections, the juvenile court found A.R.S. §§ 8-514 and 8-514.02 "controlling" and ordered that ADES had the "discretion for transition and placement of the [C]hildren with their parents" because the court had "confidence that the case manager who so diligently filed this case and ensured that the parents are completing their plans and monitoring all of the services that have been in place will continue to do that monitoring." Further, the court found prospectively that "assuming that this case continues as it has been and the parents continue to engage in services, . . . there [will be] no substantial risk of harm [to the Children once] . . . the housing is secure, [and] the in-home services are in place for the [C]hildren to be returned."

**¶6** The Children filed a petition for special action with the court of appeals, which declined to accept jurisdiction. We granted review because the respective authority of the juvenile court and ADES in this context is a recurring issue of statewide importance. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## II. ANALYSIS

**¶7** Whether a court can delegate discretion to ADES to return a dependent child to his or her parents without first determining that return is in the child's best interests is a question of law, which we review de novo. *State v. Hansen*, 215 Ariz. 287, 289 ¶ 6, 160 P.3d 166, 168 (2007).

**¶8** The Children contend that § 8-861 and Rule 59 apply because ADES became their "guardian" when the trial court adjudicated them dependent as to both parents, made them wards of the court, and placed them in ADES's custody. Accordingly, pursuant to both the statute and the rule, they may be returned to their parents only if the court finds by a preponderance of the evidence that their return would not create a substantial risk of harm to their physical, mental, or emotional health or safety.

**¶9** We reject this argument. Section 8-861 provides that

> After the temporary custody hearing, on request of a parent or guardian[,] the court shall order that the child be returned to the child's parent or guardian if the court finds by a

3

preponderance of the evidence that the return of the child would not create a substantial risk of harm to the child's physical, mental or emotional health or safety.

Similarly Rule 59 states,

At any time after the temporary custody hearing, a parent, guardian, or Indian custodian may file a motion with the court requesting return of the child to the custody of the parent, guardian[,] or Indian custodian. The court shall set a hearing to determine whether return of the child would create a substantial risk of harm to the child's physical, mental, or emotional health or safety.

¶10 A.R.S. § 8-861 is part of the Article titled "Permanency Determination." Rule 59 implements § 8-861. Although no statute or rule defines "guardian" for purposes of dependency proceedings, the use of the term in related statutory provisions demonstrates that ADES does not serve as a "guardian." *See*, *e.g.*, A.R.S. § 8-801 (defining "in-home intervention" as services provided by ADES "while the child is still in the custody of the parent, guardian, or custodian"); *cf.* A.R.S. §§ 8-101(9), -871(B) (defining "permanent guardian" as "a legal guardian appointed by the court pursuant to § 8-525 [now § 8-871], which provides that "[a]n agency or institution may not be a permanent guardian").

¶11 Furthermore, ADES was not appointed as the Children's guardian under the statutes generally authorizing such appointments. *See* A.R.S. §§ 8-871, -872, 14-5201, -5207. Under the statutory scheme, ADES is the Children's custodian. *See* A.R.S. § 8-201 ("'Custodian' means a person, other than a parent or legal guardian, who stands in loco parentis to the child or a person to whom legal custody of the child has been given by order of the juvenile court."). Accordingly, we hold that ADES is not a "guardian" under A.R.S. § 8-861 or Rule 59.

¶12 ADES contends, and the juvenile court agreed, that it has discretion to place the Children with their parents under §§ 8-514 and 8-514.02. Those statutes generally address placement of children after removal from their home, and § 8-514.02(A) provides that ADES "may place a child with a parent or relative." ADES argues that after the court placed the Children in its custody, §§ 8-514 and 8-514.02 authorized it to return the

Children to their parents without a hearing because "neither statute requires that the juvenile court make any express findings prior to ADES placing children with their parents."

¶13        We reject this contention.  Neither § 8-514 nor § 8-514.02 governs the return of dependent children to their parents; rather, those sections apply when a dependent child is placed in out-of-home care. Section 8-514 requires that ADES place the child in "the least restrictive type of placement available, consistent with the needs of the child," giving preference to placement with a parent.  A.R.S. §§ 8-514(A), (B)(1).  The parent with whom a child is placed, however, shall not allow the child to "[h]ave any contact with the allegedly abusive or neglectful parent . . . ." *Id.* § 8-514.02(B).  Clearly then, placement with the allegedly abusive/neglectful parent is not an option for placement with a parent or relative.  Because § 8-514.02(B) prohibits contact with a parent who is the subject of the dependency case, § 8-514 only applies when a child is dependent as to just one parent and ADES wants to place the child with the other parent.

¶14        In this case, the Children were adjudicated dependent as to both parents.  Therefore, §§ 8-514 and 8-514.02 are inapplicable.  In making the dependency determination, the court found that the minors could not be returned to either parent "without a substantial risk of harm to their mental, physical[,] or emotional health and safety."  Accordingly, ADES is not authorized to return the Children to their parents in the face of the court's prior order removing them from their parents' home.

¶15        Arizona's statutes, case law, and rules of procedure reflect that the juvenile court is obligated to oversee the dependency case, to consider the best interests of the child in every decision, and to "independently review the decisions and recommendations of [A]DES." *In re Maricopa Cnty. Juv. Action No. JD-6236*, 178 Ariz. 449, 452, 874 P.2d 1006, 1009 (App. 1994).  The court is required to hold periodic review hearings at least once every six months.  A.R.S. § 8-847.  At that review hearing, the court again "shall consider the health and safety of the child as a paramount concern."  A.R.S. § 8-847(D).  At a parent's request, the court shall return the child to the parent, if the court finds that return would not create a substantial risk of harm to the child's physical, mental, or emotional health or safety.  A.R.S. § 8-861.

¶16        After a child is removed from the home, the court must hold a permanency hearing within six months if the child is under three and within twelve months if the child is older. A.R.S. § 8-862. At that hearing, the court determines the future permanent legal status of the child based on his or her clear best interests. A.R.S. §§ 8-862(D), (F), (H). Accordingly, if reunification is not in the child's best interests or further efforts would be unproductive, the court may establish a permanent guardianship. Arizona's rules of juvenile procedure augment these statutory obligations. *See* Ariz. R. P. Juv. Ct. 47.1(A), 50(B)(5),(6), 51, 55(E)(5), 56, 58(F)(3), 59. Although the standard is phrased differently in various statutes and rules, the court is required, at each step, to determine that its orders serve the child's best interests.

¶17        While many of the relevant statutes require the court to consider the best interests of the child, the law provides more specific direction with regard to reunification orders. With respect to disposition hearings in general, A.R.S. § 8-845 requires the court to "consider the health and safety of the children as its paramount concern." As to the return of a child to a parent or guardian, § 8-861 requires the court to determine that "the return of the child would not create a substantial risk of harm." Clearly, a court cannot determine that return to the parents is in the child's best interests if it has not, under the circumstances actually presented to it, considered the child's health and safety and whether the child would be subject to a substantial risk of harm if returned. *Compare* A.R.S. §§ 8-514, -863, -871, *with* A.R.S. § 8-861. At a minimum, the court's determination that returning a dependent child to his or her parents is in the child's best interests requires finding that return does not subject the children to a substantial risk of harm.

¶18        Upon finding that the Children were dependent in this case, the juvenile court, considering their health and safety as its paramount concern, ordered that an out-of-home placement was appropriate. That order remained in effect at the April 2013 hearing, and only the court had authority to modify it. To do so, at such time as ADES moved for a change in the Children's physical custody to the parents, the court was obliged to independently review ADES's recommendations and proposed actions to determine whether reunification was in the Children's best interests.

¶19        Here, the juvenile court not only failed to make that determination, it also found that returning the Children to their parents

6

would expose them to a substantial risk of harm. Nonetheless, the court granted ADES discretion to return the Children to their parents once housing was secured and services were put in place. Based on its assumption that housing for the Children eventually would be secured and the parents would complete necessary services, the court found that there would be no risk of substantial harm to the Children if those contingent circumstances occurred. In doing so, the court impermissibly delegated its duty to independently determine that reunification is in the Children's best interests under the actual circumstances. Additionally, by declining to enter an order to return the Children to the parents, the court deprived the Children of the right to seek appellate review of the order changing physical custody.

¶20 We recognize that reunification will not necessarily happen immediately upon the court's determination that it is in the child's best interests. Accordingly, after the juvenile court determines that return to the parents is in the child's the best interests, it can give ADES discretion to effectuate that reunification. This discretion, including providing specific directions as to the services or conditions that must be in place before returning a child, is necessary to address the changing situations that can occur in the process of reunification. The court is not required to micromanage the transition of a child from out-of-home placement to permanent placement.

¶21 But here, the juvenile court erred by granting discretion to ADES to place the Children with their parents without a prior judicial determination that, on the facts before it, reunification was in the Children's best interests. That determination must, at a minimum, reflect that return would not create a substantial risk of harm to the Children's physical, mental, or emotional health or safety.

### III. CONCLUSION

¶22 For the foregoing reasons, the juvenile court must specifically determine that return of a dependent child to his or her parents is in the child's best interests before ordering the return. Because the juvenile court did not do so here, we vacate the court's order.

7