NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

AURORA M., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, B.M., *Appellees.*[1]

No. 1 CA-JV 14-0264
FILED 7-9-2015

Appeal from the Superior Court in Maricopa County
No. JD22302
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Jeffrey M. Zurbriggen, Phoenix
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Michael F. Valenzuela
*Counsel for Appellee*

---

[1] The caption has been amended to safeguard the juvenile's identity pursuant to Administrative Order 2013-0001.

---

## MEMORANDUM DECISION

Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Donn Kessler joined.

---

**T H U M M A**, Judge:

**¶1**        Aurora M. (Grandmother) appeals from the superior court's order denying her motion for change of physical custody for her grandson, B.M. Finding no error, that order is affirmed.

### FACTS[2] AND PROCEDURAL HISTORY

**¶2**        Grandmother is the biological maternal grandmother of B.M., who was born approximately seven weeks premature in May 2012. B.M. was born with intrauterine drug exposure to methamphetamines and marijuana and had significant medical complications, including a diaphragmatic hernia that required surgery. For nearly three months after his birth, B.M. was in the hospital's neonatal intensive care unit. B.M. remains medically fragile and suffers from underdeveloped lungs, an abnormal gastrointestinal tract, significant swallowing and feeding difficulties, cerebral palsy and related medical issues.

**¶3**        The Department of Child Safety (DCS) took physical custody of B.M. upon his release from the hospital and filed a dependency petition on August 1, 2012. At that time, DCS considered Grandmother as a placement but identified safety issues because B.M.'s mother still lived in the home and DCS had previously investigated Grandmother when she was parenting B.M.'s mother. DCS also had concerns that Grandmother did not know how to meet B.M.'s significant needs. B.M. was placed with, and has remained with, foster parents who have experience caring for medically fragile children and who are potential adoptive parents. In September 2012, the superior court appointed a Court Appointed Special Advocate (CASA).

---

[2] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2, 181 P.3d 1126, 1128 (App. 2008).

*See* Ariz. Rev. Stat. (A.R.S.) § 8-523 (2015);[3] *see also* Ariz. Code Jud. Admin. § 7-101.

**¶4** By March 2013, B.M. was found dependent as to both parents and the court adopted a case plan of family reunification with a concurrent case plan of severance and adoption. In June 2013, at DCS' request, the court changed the case plan to severance and adoption. At about that same time, Grandmother moved to intervene and to change physical custody (CPC), asking that B.M. be placed in her physical custody. The court granted the motion to intervene "for the limited purpose of" allowing Grandmother to pursue the CPC motion. After the change in case plan, Grandmother made commendable efforts to meet DCS' requirements in order to be considered as a placement for B.M. Grandmother also regularly attended B.M.'s medical appointments and Grandmother no longer allowed B.M.'s mother in her home.

**¶5** The superior court received evidence on the CPC motion on two days in February 2014, one day in March 2014 and one day in June 2014.[4] The court closed the proceeding to the public, but denied Grandmother's request to exclude the CASA. *See* Ariz. R.P. Juv. Ct. 41(E); *see also id.* 37(B) ("Participants"). The court then heard testimony from various witnesses, including B.M's doctors, Grandmother and the DCS caseworker, received evidence and heard argument on the CPC motion. When DCS sought to admit into evidence the CASA's reports (which recommended that B.M. "remain in his current placement" and that the CPC motion "be denied"), Grandmother objected, arguing the CASA had not testified and was not a party. The superior court sustained Grandmother's objection, but directed the CASA's reports be filed to make clear they were part of the record.

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

[4] The parental rights of mother and father were terminated before the evidentiary hearing on the CPC motion began and are not at issue in this appeal.

**¶6**       After taking the matter under advisement, the superior court denied the CPC motion in September 2014. After discussing B.M.'s medical needs and the procedural history, the court's minute entry noted a filing by the guardian ad litem generally agreeing with the CPC motion. The court also noted the "CASA filed her position statement with the Court. [DCS] has consistently opposed changing the child's physical custody as being contrary to the needs and best interests of the child." Mentioning the testimony and evidence presented, the court found "the factual and legal analysis supports the child remaining placed in his current placement with the foster family where he has lived since his discharge from the hospital and which is the only home he has known." The court then found Grandmother had not shown that changing B.M.'s custody was "without undue risk or in the child's best interests." The court added that the "touchstone" is B.M.'s best interests, "and the list and order of possible placements in ARS § 8-514 reflects a preference rather than a mandate." "Under the totality of the circumstances, especially in view of the child's chronic medical needs as well as his emotional and psychological well-being," the court found B.M. "should remain in his current placement."

**¶7**       Grandmother timely appealed and this court has jurisdiction under A.R.S. §§ 8-235, 12-120.21(A)(1) and -2101(A)(1) and the Arizona Rules of Procedure for the Juvenile Court 103–04.

## DISCUSSION

**¶8**       Grandmother argues the superior court erred by: (1) improperly considering the CASA's reports; (2) placing the burden of proof on Grandmother and (3) making findings unsupported by the record. This court reviews matters of legal interpretation de novo, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, 83 P.3d 43, 47 (App. 2004), while placement orders for dependent children are reviewed for an abuse of discretion, *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 404 ¶ 8, 187 P.3d 1115, 1117 (App. 2008).

**I.     The Superior Court Did Not Improperly Consider The CASA's Reports.**

**¶9**          Grandmother argues the superior court violated her due process rights, her right to cross-examine witnesses "and several evidentiary requirements" when the court's decision "relied on" the CASA's reports, which were filed but had not been admitted in evidence. Grandmother did not raise this issue with the superior court but argues on appeal this purported reliance "was clear legal error" and "was clearly fundamentally prejudicial."

**¶10**          Among other things, by statute, a CASA "shall . . . [a]dvocate for the child's safety as the first priority" and "[g]ather and provide independent, factual information to aid the court in making its decision regarding what is in the child's best interest." A.R.S. §§ 8-522(E)(2), (3). The CASA's reports challenged here do just that.

**¶11**          Grandmother speculates that the superior court considered the substance of the CASA's reports because it noted, in the order denying the CPC motion, that the "CASA filed her position statement with the Court." The CASA's reports were filed without objection and there is no claim the CASA could not properly have filed such reports. Moreover, there is no indication that the superior court relied on the substance of those reports in denying the CPC motion, as opposed to reciting that the reports had been filed. In addition, Grandmother had known for months that the CASA opposed the CPC motion. A CASA report filed in November 2013 (months after the filing of the CPC motion but months before the evidentiary hearing on that motion), noted concerns about Grandmother's desire to have B.M. placed with her and recommended that B.M. "remain in his current placement." That report was considered by the court without objection at a November 2013 report and review hearing where Grandmother was present.

**¶12**          Grandmother speculates that the superior court considered the substance of the CASA's reports because it denied the CPC motion after asking her to submit proposed findings of fact. The record does not support an inference that, absent the CASA's reports, the court would have granted the CPC motion. At the end of the evidentiary hearing, the court asked "who wants [the] findings of fact on this one? [DCS] really doesn't care because [DCS] wants me to deny the motion." The superior court concluded that "I think it's your [Grandmother's] motion, I think you should submit findings – proposed findings of fact . . . to support a granting of the motion." This directive does not, somehow, suggest the court would have granted

the CPC motion if it had not considered the substance of the CASA's reports.

¶13        Grandmother has not shown the superior court relied upon the substance of the CASA's reports in denying the CPC motion. Accordingly, Grandmother has shown no error, let alone error that was fundamental and prejudicial.

## II.    The Superior Court Did Not Err By Placing The Burden Of Proof On Grandmother.

¶14        Grandmother argues that the superior court erred when it required her "to not only bear the burden of proof but also to provide an affirmative best interests finding, when in fact the statutes [A.R.S. §§ 8-514 and -845] require a presumption of placement with a grandmother and require the State to prove a contrary best interests finding." Although A.R.S. § 8-514 establishes an "order for placement preference," it requires DCS to "place a child in the least restrictive type of placement available, consistent with the needs of the child." A.R.S. § 8-514. Similarly, A.R.S. § 8-845 provides that, at a disposition hearing, the court has various placement alternatives, including a grandparent "unless the court has determined that such placement is not in the child's best interests." A.R.S. § 8-845(A)(2). As noted by DCS, under these statues, "the order of placement . . . is a preference, not a mandate." *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 405 ¶ 12, 187 P.3d 1115, 1118 (App. 2008).

¶15        "[C]onsideration of the child's best interests permeates dependency and severance proceedings." *Dep't of Child Safety v. Beene*, 235 Ariz. 300, 304 ¶ 9, 332 P.3d 47, 51 (App. 2014) (citations omitted); *Antonio P.*, 218 Ariz. at 404 ¶ 8, 187 P.3d at 1117. The statutory placement preferences relied upon by Grandmother "do not mandate placing a child with a person with an acceptable higher preference if the juvenile court finds it in the child's best interests to be placed with someone with a lower preference." *Antonio P.*, 218 Ariz. at 403 ¶ 1, 187 P.3d at 1116. When ruling on a CPC motion, as in every decision in a dependency, the touchstone is the best interests of the child. *See Alexander M. v. Abrams*, 235 Ariz. 104, 107 ¶ 15, 328 P.3d 1045, 1048 (2014). The superior court "'is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts.'" *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18, 219 P.3d 296, 303 (App. 2009) (citation omitted). A superior court's factual findings will be affirmed unless they are clearly erroneous or not supported by the record. *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, 982 P.2d 1290, 1291 (App. 1998). This court views

the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2, 181 P.3d 1126, 1128 (App. 2008).

**¶16**　　　　As applied, the superior court's decision expressly "prioritizes the needs and best interests of the child and avoids undue risk to the protection and safety and stability of the child." The court noted B.M. "has chronic medical conditions that continue to necessitate that he be closely monitored." This finding is supported by reasonable evidence in the record, including testimony from the doctors and the DCS caseworker. Although Grandmother has made commendable efforts in learning about B.M's medical issues, and loves B.M., there is reasonable evidence in the record to support the finding that B.M. should remain "in his current placement with the foster family where he has lived since his discharge from the hospital and which is the only home he has known."

**¶17**　　　　Nor has Grandmother shown the court incorrectly allocated the burden of proof. Grandmother agreed at the beginning of the hearing that, as the movant, she carried the burden of proof on the CPC motion. And as noted above, that burden included a showing that granting the CPC motion was in the best interests of B.M. *See Alexander M.*, 235 Ariz. at 107 ¶ 15, 328 P.3d at 1048. Accordingly, Grandmother has not shown the superior court erred in allocating the burden of proof.

**III.　The Superior Court Did Not Make Findings Unsupported By The Record.**

**¶18**　　　　Grandmother argues the superior court's finding that B.M. suffered from "lung, digestive and feeding issues" was unsupported by the record and that the court "inappropriately" noted that familial "impact can be realized without the necessity of having to change placement of the child to the grandmother's home." This court views the evidence in the light most favorable to upholding the superior court's order and will affirm unless there is no reasonable evidence to support it. *See Michael J. v. Ariz. Dep't. of Econ. Sec.*, 196 Ariz. 246, 250 ¶ 20, 995 P.2d 682, 686 (2000).

**¶19**　　　　Several doctors testified as to B.M.'s medical issues, as did Grandmother herself. Witnesses also testified as to the interactions between Grandmother and B.M. despite the fact that B.M. was placed with foster parents. Grandmother essentially argues the evidence received should have been weighed differently, something this court will not do. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 12, 53 P.3d 203, 207 (App. 2002) (citing cases). Similarly, Grandmother has not shown how the following

observation was not supported by the record: "The Court is cognizant of the positive impact upon the child to have a familial connection and relationship. However, that impact can be realized without the necessity of having to change placement of the child to the grandmother's home." The record supports the superior court crediting Grandmother's love for B.M. and her desire to care for B.M. However, the evidence also justifies the emphasis on B.M.'s fragile medical condition and the denial of the CPC motion. Accordingly, the superior court did not make findings unsupported by the record.

## CONCLUSION

**¶20** Because the superior court did not err, the order denying Grandmother's motion for a change in physical custody is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED : ama