NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

FRANK G., ANNETTE G., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.H., JOSHUA O., ELIZABETH O.,
*Appellees*.

No. 1 CA-JV 15-0054
FILED 12-1-2015

Appeal from the Superior Court in Maricopa County
No. JD509205
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Gillespie, Shields, Durrant & Goldfarb, Phoenix
By DeeAn Gillespie, Geoff Morris, Erika Isard
*Counsel for Appellants*

Arizona Attorney General's Office, Mesa
By Eric Knobloch
*Counsel for Department of Child Safety*

Law Office of Janet S. Story
By Janet S. Story
*Counsel for Appellees Joshua O. and Elizabeth O.*

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge John C. Gemmill joined.

C A T TA N I, Judge:

¶1        Frank G. and Annette G. (the "Gs") appeal from the juvenile court's denial of the Arizona Department of Child Safety ("DCS")'s motion for change in physical custody of J.H., who was born in September 2012 and was living with Joshua and Elizabeth O. (the "Os").  For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        The Gs are the former guardians of J.H.'s biological mother and the adoptive parents of his older brother, A.G.  The juvenile court approved their request to be J.H.'s foster parents after his mother was incarcerated.  After J.H. had been with the Gs for a little over a year, DCS received two hotline reports alleging neglect.  J.H.'s adoption caseworker, his guardian ad litem ("GAL"), and a DCS Area Program Manager agreed that removal was necessary due to safety concerns.[1]  DCS initially planned to delay removal until an adoptive placement could be found.  Shortly after receiving a third hotline report, DCS removed J.H. from the Gs, placed him with the Os, and told them J.H. was adoptable.

¶3        After placing J.H. with the Os, DCS held a meeting regarding J.H.'s removal.  Despite disagreement among some DCS personnel, the agency recommended reunifying J.H. with the Gs, with J.H. to remain with the Os pending the implementation of services, classes, and counseling for the Gs.  After being informed of DCS's recommendation, the Os filed an adoption petition.  In response, DCS filed a motion for change in physical custody, seeking to place J.H. with the Gs.  The juvenile court allowed both the Os and the Gs to intervene in the physical custody proceedings.

¶4        The juvenile court conducted a two-day hearing during which it considered testimony from DCS employees, as well as from

_____

[1]        Two reports were similarly filed concerning A.G.  DCS also removed A.G. from the Gs' home, but he was eventually returned to them.

Annette G., Elizabeth O., J.H.'s developmental instructor, and his school teacher. The testimony centered on J.H.'s removal from the Gs, his life with the Gs, and his life with the Os. Caseworkers and developmental instructors also submitted written reports to supplement testimony regarding J.H.'s well-being with each family.

**¶5** The court ultimately determined it was in J.H.'s best interests to remain with the Os and to be adopted by them. DCS did not challenge the superior court's ruling, but the Gs timely appealed.

## DISCUSSION

**¶6** The court's primary consideration in dependency cases is the best interests of the child. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21, 119 P.3d 1034, 1038 (App. 2005). We review the juvenile court's placement orders for abuse of discretion. *Maricopa Cnty. Juv. Action No. JD-6236*, 178 Ariz. 449, 451, 874 P.2d 1006, 1008 (App. 1994).

**¶7** The Gs raise three arguments on appeal. They initially assert that the juvenile court abused its discretion by allowing the Os to intervene. They further argue that the court erred by not bifurcating the proceedings to first determine whether removal from the Gs' home was proper. Finally, they claim that J.H. should have been returned to them. We address each argument in turn.

## I. Intervention.

**¶8** The Gs contend that the juvenile court should not have granted the Os' motion to intervene because the proceedings at issue had been initiated by DCS to return J.H. to the Gs. We review rulings granting or denying a motion to intervene for abuse of discretion. *See Bechtel v. Rose*, 150 Ariz. 68, 72, 722 P.2d 236, 240 (1986).

**¶9** Under Rule 24(b)(2) of the Arizona Rules of Civil Procedure, non-parties are permitted to intervene in a pending case "[w]hen an applicant's claim or defense and the main action have a question of law or fact in common." *See also Roberto F. v. Ariz. Dep't of Econ. Sec.*, 232 Ariz. 45, 50, ¶ 20, 301 P.3d 211, 216 (App. 2013) (applying Rule 24 to permissive intervention in dependency proceedings). In the interests of justice and the protection of the parties' rights, we construe Rule 24 liberally. *See id.*

**¶10** The Gs argue that the Os' request to adopt lacked a common question of law or fact with the dependency action. The Gs contend in particular that the juvenile court proceedings were intended to "correct[]

the Department's improper removal of J.H." and that the Os had no interest in that action.

¶11 But the purpose of the juvenile court proceedings was to determine physical custody of J.H. The court heard testimony regarding the initial removal, but did so in the context of considering J.H.'s best interests. When DCS filed its motion, J.H. had already resided with the Os for two months, and they had filed their adoption petition. The Os' desire for permanent custody of J.H. was clearly a common question in a proceeding in which physical custody of J.H. was being litigated.

¶12 Moreover, under *Bechtel*, the juvenile court must consider not only whether there is a common question to be litigated, but also several other factors, including "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." 150 Ariz. at 72, 772 P.2d at 240 (quotation omitted).

¶13 Given the Os' status as foster parents and their intent to adopt J.H., their participation contributed to the just and equitable adjudication of the legal question presented. Thus, the juvenile court did not abuse its discretion by granting the Os' motion to intervene.

## II. Bifurcation of the Evidentiary Hearing.

¶14 The Gs, who were in their 70s at the time of removal, contend that the juvenile court should have conducted an initial hearing to determine whether DCS's removal of J.H. was improperly based on age discrimination. The Gs argue that there would have been no need to conduct further proceedings if the court had first concluded that J.H. was improperly removed from their home.

¶15 But the Gs did not raise this argument before the superior court, and we generally do not consider objections raised for the first time on appeal, particularly when the objection concerns a matter of trial procedure. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 21, 153 P.3d 1074, 1081 (App. 2007) (litigant waived appellate argument that trial court erred by not making individualized findings because such findings were not requested at trial). Thus, we conclude that the Gs have waived this issue.

¶16 Moreover, we are unaware of any Arizona statute or case law that requires a juvenile court to bifurcate a proceeding such as this to determine whether removal was proper before making a best interests

determination regarding physical custody. Given the absence of any bifurcation requirement, the juvenile court has broad discretion to determine whether to split the proceedings. *See Morley v. Superior Court*, 131 Ariz. 85, 87, 638 P.2d 1331, 1333 (1981).

**¶17** Furthermore, we have consistently held that the best interests of the child are the paramount concern in dependency proceedings. *See William Z. v. Ariz. Dep't of Econ. Sec.*, 192 Ariz. 385, 388, ¶ 14, 965 P.2d 1224, 1227 (App. 1998) ("[W]e focus on the welfare of the children, giving only secondary consideration to the remaining interested parties."). And under the approach urged by the Gs, the juvenile court would have improperly been required to consider potential harm to the Gs exclusive of J.H.'s best interests. *See Alexander M. v. Abrams*, 235 Ariz. 104, 107, ¶ 15, 328 P.3d 1045, 1048 (2014) ("Arizona's statutes, case law, and rules of procedure reflect that the juvenile court is obligated . . . *to consider the best interests of the child in every decision*[.]") (emphasis added).

**¶18** The Gs were allowed to present evidence and cross-examine witnesses. There is no indication that the structure of the evidentiary hearing impeded their ability to argue for custody of J.H. or to argue that the removal of J.H. from their home was improper. Accordingly, the juvenile court did not abuse its discretion or otherwise err by not *sua sponte* bifurcating the proceedings.

## III. Placement with the Os.

**¶19** The Gs argue that the juvenile court should have ordered J.H. to be returned to the Gs because DCS did not follow proper procedures in removing J.H. from their home. They further argue that, because DCS recommended returning J.H. to them and because the court found no safety concerns, it erred by granting custody of J.H. to the Os.

**¶20** DCS may remove a child from a foster home when it is "clearly necessary for the child's interests and welfare." Ariz. Rev. Stat. § 8-517. The Gs contend that because their home was previously found to be safe for J.H., DCS lacked authority to remove him. They further contend that the real reason for J.H.'s removal from their home was their ages. But the Gs did not challenge J.H.'s removal on either of those bases, and they have thus waived appellate review of those issues. *See Christy C.*, 214 Ariz. at 452, ¶ 21, 153 P.3d at 1081.

**¶21** Moreover, even if J.H.'s removal from the Gs' home was improper, the ultimate question before the court was J.H.'s best interests as

of the date of the hearing, and that issue was independent of the Gs' right to maintain custody prior to J.H.'s removal from their home.

¶22        The record demonstrates that the juvenile court considered DCS's recommended placement, as well as significant evidence regarding the Os' ability to provide for J.H.'s needs in ways that the Gs were unable to provide.  For example, the court heard evidence that, within a few months of being placed with the Os, J.H.'s cognitive, emotional, and behavioral issues had improved significantly, and he had begun communicating and problem-solving at age-appropriate levels. Additionally, J.H. had improved physically such that he no longer needed occupational therapy sessions.  J.H.'s developmental instructor attributed these dramatic improvements to the Os' nurturing environment, including their attentiveness to J.H.'s needs and their willingness to work with his developmental instructor.  And both the developmental instructor and the DCS caseworker recommended placing J.H. with the Os.

¶23        Although DCS had recommended placement with the Gs, and although the Gs may have been an acceptable placement, the court was required to independently determine the best interests of the child.  *JD-6236*, 178 Ariz. at 452, 874 P.2d at 1009.  The court did so, and we find no abuse of discretion in its determination that placing J.H. with the Os was in his best interests.

## CONCLUSION

¶24        For the foregoing reasons, the judgment is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama

6