NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

BRITTANY W., RYAN W., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, H.W., B.W., S.W., A.W., *Appellees*.

No. 1 CA-JV 17-0427
FILED 3-1-2018

Appeal from the Superior Court in Maricopa County
No. JD530762
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Law Office of Bernard P. Lopez, Goodyear
By Bernard P. Lopez
*Counsel for Appellant Brittany W.*

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant Ryan W.*

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Appellee Department of Child Safety*

Law Office of Heidi P. Zoyhofski, Gilbert
By Heidi P. Zoyhofski
*Guardian Ad Litem for Appellee Children H.W., B.W., S.W., A.W.*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Patricia A. Orozco[1] joined.

---

**C R U Z**, Judge:

**¶1**        Brittany W. ("Mother") and Ryan W. ("Father") challenge the superior court's order granting a motion for change of physical custody of their children to Washington.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2**        Mother and Father are the parents of four minor children: H.W., born in 2008; B.W., born in 2010; S.W., born in 2013; and A.W., born in 2016 (collectively "the children").  On March 29, 2017, the Department of Child Safety ("DCS") filed a dependency petition for the children, alleging they were dependent as to Mother and Father due to substance abuse and neglect, mental illness, and domestic violence.

**¶3**        DCS alleged that Mother and Father were arrested on March 24, 2017 for selling drugs out of their home and child endangerment.  The children reported that people would be in and out of the home at all times of the day, and DCS alleged the parents neglected the children and placed them at risk by exposing them to criminal activity and drugs in the home. It was reported that Mother engaged in multiple suicide attempts and Father stated in March 2017 that he was going to commit suicide.  In addition, it was reported that Mother was sexually abused as a teenager and Father suffered mental breakdowns.  Finally, it was reported that the

---

[1]        The Honorable Patricia A. Orozco, retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

parents had domestic violence issues; the children reported seeing Mother hit Father, and Father reported that he previously pled guilty to domestic violence and was taking classes. In addition to DCS's allegations in the petition, there were concerns regarding a January 2017 incident when Father appeared to hit Mother's car with his vehicle while under the influence of drugs and alcohol, while A.W. was in the vehicle. It was alleged that at the time of the accident, the other children were at their grandparents' house due to an incident of domestic violence that occurred the previous day, in which Father reportedly held a knife close to Mother's face while she was holding A.W. Temporary custody was granted to the maternal grandmother.

¶4            On April 3, 2017, the court affirmed the temporary custody order, finding "it is contrary to the welfare of the child(ren) to be returned to or placed in the custody of the parent/guardian . . . based on the allegations in [DCS's] petition[.]" A guardian *ad litem* ("GAL") was appointed for the children. The court ordered that, if no placement could be found in Arizona, DCS should expedite an Interstate Compact for the Placement of Children ("ICPC") referral to the State of Washington, where the children's paternal aunt and uncle reside. Two weeks later, DCS moved to change physical custody of the children to the paternal grandmother, who also resided in Washington. The court granted DCS's motion, and set the contested dependency hearing for August 24, 2017. Although the paternal grandmother initially moved the children to Washington, with verbal authorization from DCS and on a temporary basis, there were delays in processing the ICPC.

¶5            At a July 2017 Foster Care Review Board update, Mother stated she graduated from a substance-abuse treatment course, completed a six-week parenting course, she and Father were participating in individual and couple therapy, and that her criminal case was "scratched," as there was not enough evidence to proceed. Father stated that he had tested negative for all substances, except marijuana, but that he had a medical marijuana card and was pursuing alternative treatments to marijuana. Father stated he was employed and had paystubs for verification, had attended substance-abuse treatment, attended parenting classes, and was nine weeks into a domestic violence course. Both parents stated they speak with the children frequently and try to spend as much time with them as they can. The DCS case manager stated the children were anxious to return home and verified much of what Mother and Father had stated. The Board noted its concern that neither party provided documentation regarding the criminal matter, but otherwise was pleased with the parents' participation in services.

¶6          In August, the GAL became aware that DCS, without a court order, moved the children back into the parents' home on August 3. In her motion to show cause, the GAL advised the court that DCS failed to expedite the ICPC request as ordered and requested an expedited hearing. DCS argued that it moved the children back into the home, with a safety plan, as ICPC had not been approved and DCS believed the parents' progress indicated it was a better option than foster care. DCS then moved for a change of physical custody to return the children to the parents' home.

¶7          The GAL questioned the reasons the children were returned to the parents' home, given DCS's failure to complete the ICPC and the fact no evidentiary finding was made that a return of custody would be in the children's best interests. DCS opposed the GAL's motion, asserting that moving the children to Washington would impede the goal of reunification, although DCS also noted it had received mixed messages from the parents regarding their desire for the children to remain in Arizona or be moved to Washington under a guardianship. In its motion, DCS attached an August 11 report detailing a meeting it held on August 2 with the parents and paternal grandmother to discuss the parents' opposition to move the children to Washington instead of in-home placement with the appointment of a safety monitor. DCS stated that because no ICPC was completed, the children were not set up to receive services in Washington. Paternal grandmother then returned to Washington and left the children behind in Arizona with Father and Mother.

¶8          In late August, the court denied DCS's motion to change physical custody back to the parents. The court affirmed its previous order granting custody of the children to paternal grandmother,[2] but allowed the children and grandmother to stay with Mother and Father for the next week while the ICPC was completed. The court did not receive a permanency plan and thus could not conduct a corresponding hearing. The court continued the dependency hearing to September 26.

---

[2]          The minute entry was later corrected to affirm placement with grandmother "until the children can be placed with paternal aunt and uncle in Washington pursuant to the [ICPC]" as was previously discussed. It seems from the record the intention was always to place the children in Washington upon the completion of the ICPC, as discussed in the court's April 3 minute entry, and as was stated in open court at the August 24 conference.

**¶9** The GAL moved to change physical custody to paternal aunt and uncle, and requested an expedited hearing, claiming DCS was not acting in the children's best interests.

**¶10** On September 15, 2017, at an expedited conference, the court granted the GAL's motion to change physical custody of the children, and in so doing affirmed its August 24 order to place the children with their paternal aunt and uncle in Washington, pursuant to the ICPC. The court found the change would be the least restrictive placement consistent with the needs of the children; no specific findings of fact were otherwise made. The court noted its concern that, despite services, "the children are suffering" and "continue to suffer while the parents are doing these services." The court ordered DCS and the parents to continue family reunification services with the children in Washington, and ordered DCS to facilitate contact with the parents, supervised by the placement.

**¶11** Father and Mother timely appealed. An order for change in physical custody is appealable, *Maricopa Cty. Juv. Action No. JD-500116*, 160 Ariz. 538, 542-43 (App. 1989), and we thus have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235 and 12-120.21, and Arizona Rule of Procedure for the Juvenile Court 88.[3]

## DISCUSSION

**¶12** Section 8-514.02 allows children to be placed with a parent, a relative, or a person who has a significant relationship with the children. We review the superior court's determinations for an abuse of discretion, *Owen v. Blackhawk*, 206 Ariz. 418, 420, ¶ 7 (App. 2003), but review alleged constitutional violations *de novo*, *State v. Hargrove*, 225 Ariz. 1, 13, ¶ 42 (2010). The superior court has broad discretion in determining the placement of a dependent child. *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 404, ¶ 8 (App. 2008). The court's primary consideration is the health and safety of the children. *Id.*; *Alexander M. v. Abrams*, 235 Ariz. 104, 107, ¶ 15 (2014); A.R.S. § 8-845(B). In addition, the court is required to consider the best interests of the children at every stage of dependency. *Alexander M.*, 235 Ariz. at 107, ¶ 15.

**¶13** Father and Mother challenge the court's order on the grounds it effectively terminated visitation and prevented proper reunification services.

---

[3] DCS did not submit a brief, but it stated that it supports Mother's and Father's position.

¶14        Parents have a fundamental right to the care, custody, and management of their children; however, this right is not without its limits. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005).  Based on harm to the children, DCS may remove the children from their parents' home, and place them accordingly.  *Alexander M.*, 235 Ariz. at 106-08, ¶¶ 11-18.

¶15        Granting a change in physical custody is not the same as denying visitation or terminating visitation rights.  *Compare Juv. Action No. JD-500116*, 160 Ariz. at 542, *with Maricopa Cty. Juv. Action No. JD-5312*, 178 Ariz. 372, 373-74 (App. 1994).  A change in physical custody may have such "a substantial impact on the natural [parent's] practical ability to have any contact with [their children]" that it may hinder visitation, however, this does not in itself terminate visitation.  *Juv. Action No. JD-500116*, 160 Ariz. at 542 (considering whether a change in physical custody is an appealable order).

¶16        The court's order did not terminate visitation, nor did it prevent reunification; by contrast, the court ordered DCS and the parents to continue with reunification services and ordered DCS to facilitate contact between the parents and children.  The fact the children were moved to Washington was not the result of a dependency determination or a termination of parental rights, but was due to the absence of a suitable placement in Arizona during proceedings.  Because visitation was not at issue, we do not address whether specific findings were required to determine if visitation would pose a risk of harm to the children.  *See Michael M. v. Ariz. Dep't of Econ. Sec.*, 202 Ariz. 198, 201, ¶¶ 11-13 (App. 2002).

¶17        Father argues there was insufficient evidence to order a change in physical custody to the children.  In addition, Mother contends the court violated her due process rights when it ordered the change in physical custody, as the court did not conduct an evidentiary hearing on the matter.

¶18        The court conducted a pretrial conference on August 24, 2017, at which Mother's and Father's counsel informed the court of the services the parents had completed.  The parents then argued that placement with them would pose no harm to the children.  The court denied the parents' motion to change physical custody back to them.

¶19        On September 11, in the GAL's motion for expedited hearing, the GAL discussed a September 9 meeting to which she did not attend, between the paternal grandmother, children, parents, and case manager.

The GAL claimed DCS and the parents discussed placement in front of the children, with the DCS case manager stating they merely asked the children their preference. After asking the children their preference, the case manager and parents then discussed concerns regarding future reunification.

¶20　　At the September 15 status conference, the GAL argued DCS was not acting in the children's best interests. The GAL advised the court two of the children were displaying signs of extreme stress. The GAL specifically asked that the children be placed with their paternal aunt and uncle in Washington. DCS stated it could not remember the court order placing the children in Washington upon ICPC completion. Mother's counsel argued placement in Arizona with the parents was in the children's best interests, as they were enrolled in school, had lived in Arizona for the past three years at the time, and had friends. Mother's counsel also argued placement in Washington was not in the children's best interests as their medical doctors were in Arizona, and as it related to B.W., she had a pediatrician in Arizona familiar with her special medical condition. Father's counsel also opposed placement in Washington and advised the court of the steps Father had completed towards reunification. No evidence was taken, and Mother's counsel objected to evidence in the absence of an evidentiary hearing. The court affirmed its previous orders and granted the GAL's motion to change physical custody of the children to paternal aunt and uncle in Washington.

¶21　　While the parties dispute that a motion to change physical custody of the children to Washington was ever filed, they ignore that the original court order was for the children to be moved to Washington upon completion of the ICPC, if no placement could be found in Arizona. By denying the parents' August 14 motion to return the children to their custody, the court implicitly found there was a risk the children would suffer substantial harm, the change was not in their best interests, and the change was in contrast to their health and safety, and the record supports the court's ruling. *See In re CVR 1997 Irrevocable Tr.*, 202 Ariz. 174, 177, ¶ 16 (App. 2002) (stating that when no specific findings of fact are requested, the court may presume the trial court found every fact necessary to sustain its ruling and will affirm if reasonable evidence supports the decision).

¶22　　While DCS states that it found placement with the parents to be safe, the record reflects the highly questionable steps DCS took in this case. The record reveals DCS did not process the ICPC referral, unilaterally decided placement in Washington was not in the children's best interests, and placed the children back in parents' home without a court order. The

court's preliminary hearing ordered DCS to expedite the ICPC referral to Washington if no suitable placement could be found in Arizona, and the court then placed the children with the grandmother, who resided and lived with the children in Washington. Confusion regarding whether the children were to be placed with paternal grandmother or with aunt and uncle in Washington upon completion of the ICPC does not vindicate DCS's decision to return the children to parents' home, nor does it vindicate DCS and the parents discussing placement in front of the children and asking them their preference, nor making any of these decisions without advising the court or the children's legal representative, the GAL. The GAL presented evidence that DCS was aware of the ICPC delay in July yet did nothing to bring the matter to the court's attention until after the GAL advised the court in August that DCS had moved the children back into the parents' home.

¶23 The court's order changing physical custody to the paternal aunt and uncle in Washington did nothing more than affirm the court's initial placement orders. Further, the court's September 15 minute entry affirming its previous orders placing the children in Washington found the children would suffer harm if returned to the parents and thus that placement in Washington was in their best interests.

¶24 The record similarly does not reveal that Mother's due process rights were violated. Due process entails the opportunity to be heard at a meaningful time and in a meaningful manner. *Dep't of Child Safety v. Beene*, 235 Ariz. 300, 305, ¶ 11 (App. 2014). Although no formal evidentiary hearing was conducted, no such hearing was required. *See* Ariz. R.P. Juv. Ct. 46(C) ("The court may rule on the motion, with or without a hearing[.]"). The court's order was not a determination establishing dependency or terminating parental rights, it was merely an order considering placement of the children during proceedings. Further, the record established that Mother's and Father's counsel presented argument opposing the motion at the conferences on August 24 and September 15 and could have sought to present evidence, but instead objected to the introduction of testimony or evidence. We hold the record contains sufficient evidence that the court considered the children's interests and that it did not deny Mother and Father their due process rights.

## CONCLUSION

¶25    For the foregoing reasons, we affirm the court's order granting the motion for change in physical custody of the children.



AMY M. WOOD • Clerk of the Court
FILED:  AA