NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

RAQUEL C., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.C., J.A., *Appellees.*

No. 1 CA-JV 18-0168
FILED 12-6-2018

Appeal from the Superior Court in Maricopa County
No. JD529380
The Honorable Arthur T. Anderson, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Michelle R. Nimmo
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge James P. Beene and Judge Michael J. Brown joined.

---

**T H U M M A**, Chief Judge:

¶1        Raquel C. (Mother) challenges the superior court's orders (1) terminating her parental rights to her biological child J.A. and (2) granting a guardianship for her biological child A.C. Mother argues the court erred in finding that such action was in the best interests of the children. Because Mother has shown no reversible error, the orders are affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2        In October 2015, the Department of Child Safety (DCS) took into care A.C. (born in 2002) and J.A. (born in 2010). DCS' dependency petition alleged Mother[1] had neglected the children and was unable to parent based on substance abuse, including methamphetamine use. The children were found dependent as to Mother in November 2015 and the court adopted a family reunification case plan. Although DCS provided Mother various services, her participation was sporadic, and she had no contact with the children for extended periods of time. As a result, in September 2016, the superior court granted DCS' request to change the case plan to severance and adoption (for J.A.) and guardianship (for A.C.). As amended, DCS' motion to terminate (for J.A.) alleged abandonment, substance abuse, and nine- and fifteen-months time-in-care. DCS' motion for appointment of permanent guardianship (for A.C.) sought placement with her paternal great aunt. Both motions alleged such relief was in the best interests of the children.

¶3        The superior court held a two-day adjudication on both motions in February 2018, where DCS called as its sole witness a case specialist. By the time of trial, both children had been in an out-of-home placement pursuant to court order for more than fifteen months. Mother had no authorized contact with the children between October 2015 and April 2017, although she had some contact in March 2016 "in violation of

---

[1] The father of A.C. died before the filing of the dependency. The father of J.A. had his parental rights terminated and is not a party to this appeal.

the safety plan." During this time, Mother was not in contact with DCS and she apparently "was also incarcerated during part of that time." When Mother did have contact with DCS, she failed to consistently participate in services provided to her and tested positive for methamphetamine on various occasions.

**¶4**  While in care, both children have been placed with A.C.'s paternal great aunt. The case specialist testified the placement is a fit and proper person to serve as guardian, is willing to serve as guardian for A.C. and is willing to adopt J.A. Trial evidence indicated termination of Mother's parental rights to J.A. was in the child's best interests because it would provide "a strictly permanent option for him to be in a safe and stable home until at least the age of 18." A.C. was "okay with being in a guardianship with the prospective guardian," if she could not return to Mother. Trial evidence indicated a guardianship was in A.C.'s best interests because she "needs permanency, a stable family environment, someone who is able to parent her safely, and be there . . . for all of her needs," and the potential guardian "has demonstrated the ability and willingness to do that," and Mother has not.

**¶5**  DCS did not call Mother as a witness and, after DCS rested, Mother elected not to testify. Mother called a medical review officer, who testified about Mother's drug testing history from April 2017 through January 2018. Mother also called a DCS case aide, who observed Mother's visits with the children starting in November 2017. The children's grandfather also testified and expressed concerns about J.A.'s placement.

**¶6**  After closing arguments and taking the matter under advisement, the superior court granted DCS's motions for termination (abandonment and fifteen-months time-in-care only) and guardianship, and found doing so was in the best interests of the children. This court has jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 8-235(A), 12-2101(A) and 12-120.21(A) and Ariz. R.P. Juv. Ct. 103-04 (2018).[2]

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**DISCUSSION**

¶7        As applicable here, to terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. §8-533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *See Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249 ¶ 12 (2000); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284 ¶ 22 (2005). Also, as applicable here, to grant a Title 8 guardianship, a court must find by clear and convincing evidence specified criteria and that the guardianship is in the child's best interest. A.R.S. §§ 8-871(A), 8-872(G). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," this court will affirm an order terminating parental rights as long as it is supported by reasonable evidence." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334 ¶ 4 (2004).

¶8        Mother does not challenge the superior court's findings regarding DCS proving statutory grounds for termination (for J.A.) or that DCS proved the specified criteria alleged for a guardianship (for A.C.), and the trial record fully supports those findings. Instead, Mother challenges the findings that granting severance and a guardianship was in the best interests of the children.

¶9        When a statutory ground for termination has been proven, "the focus shifts to the interests of the child as distinct from those of the parent," *Kent K.*, 210 Ariz. at 285 ¶ 31, and "'[t]he child's interest in stability and security' must be the court's primary concern." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 12 (2018) (citation omitted).[3] "To establish that severance of a parent's rights would be in a child's best interests, 'the court must find either that the child will benefit from termination of the relationship or that the child would be harmed by continuation of the parental relationship.'" *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 288 ¶ 26 (App. 2011) (citation omitted). Although a guardianship involves somewhat different inquiries, a similar best interests analysis applies. *Cf. Jennifer B. v. Ariz. Dep't of Econ Sec.*, 189 Ariz. 553, 557 (App. 1997) (analogizing best interests requirement in revocation of guardianship to standard used in severance); *accord Alexander M. v. Abrams*, 235 Ariz. 104,

---

[3] Mother's opening brief on appeal relied heavily on *Alma S. v. Dep't of Child Safety*, 244 Ariz. 152 (App. 2017), which was later vacated by the Arizona Supreme Court. *Alma S.*, 245 Ariz. at 152 ¶ 23. This court allowed supplemental briefing on appeal addressing the impact of the Arizona Supreme Court's opinion in *Alma S.*, which the court has considered.

107 ¶ 16 (2014) ("Although the standard is phrased differently in various statutes and rules, the court is required, at each step, to determine that its orders serve the child's best interests.").

**¶10** Mother argues the superior court erred in finding best interests because she has a positive bond with the children, they love each other and she "just needs more time to turn her life around and regain custody of the children." The children, however, have been in care since October 2015. Indeed, by the time of the superior court's May 2018 ruling, the children had been in care for more than two and a half years. Mother has not shown that the court abused its discretion in rejecting any claim that the orders were not in the best interests of the children because she needed more time.

**¶11** Noting that Mother had recently engaged and completed some services, the superior court added that such conduct was "too late to demonstrate a drug free lifestyle," further finding that she "has returned to a relationship that has a domestic violence and drug use past" and she could not provide a stable home for the children. These findings, which are fully supported by the trial evidence, show denying the motions would have resulted in significant uncertainty and risk to the children, with resulting harm. Mother has not shown that, in granting the motions to prevent that harm, the court abused its discretion. *See Mario G.*, 227 Ariz. at 288 ¶ 26.

**¶12** The superior court also focused on the benefit to the children in granting the motions. The court found the children were in a safe and stable familial placement, which was meeting their needs, and were placed together. Again, these findings are fully supported by the trial record and provide a proper basis for the best interests finding. *See Mario G.*, 227 Ariz. at 288 ¶ 26. Finally, although Mother appears to argue the evidence regarding best interests should have been weighed differently, this court does not reweigh the evidence on appeal. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 12 (App. 2002) (citing cases).

**CONCLUSION**

¶13 Because Mother has shown no error, the superior court's orders terminating her parental rights to J.A. and granting a Title 8 guardianship for A.C. are affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA