NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MATTHEW J., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, R.J., T.J., LJ., *Appellees.*

No. 1 CA-JV 19-0006
FILED 8-29-2019

Appeal from the Superior Court in Navajo County
No.  S0900JD201700018
The Honorable Michala M. Ruechel, Judge

**AFFIRMED**

COUNSEL

Coronado Law Firm, P.L.L.C., Lakeside
By Eduardo H. Coronado
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellee Department of Child Safety*

Taylor Law Office, Snowflake
By D. Shawn Taylor
*Counsel for Appellees Guardian Ad Litem for R.J., T.J., L.J.*

---

## MEMORANDUM DECISION

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Vice Chief Judge Kent E. Cattani and Judge Maria Elena Cruz joined.

---

J O N E S, Judge:

¶1        Matthew J. (Father) appeals the juvenile court's order terminating his parental rights to R.J., T.J., and L.J. (collectively, the Children).  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In June 2017, the Department of Child Safety (DCS) received a report that both Father and the Children's mother (Mother) were abusing drugs, homeless, and exposing the Children to dangerous substances and domestic violence.[1]  This investigation was closed when DCS was unable to locate the Children.

¶3        In September 2017, Mother was pulled over while driving with R.J. and T.J., then ages 5 and 3, unrestrained.  After law enforcement officers found methamphetamine and two pipes in the vehicle, Mother admitted to using methamphetamine and marijuana the day before.  Mother was arrested, and the Children were released to the care of their maternal grandmother.  Days later, DCS found R.J. and T.J. in Mother's care wearing soiled diapers and observed them to be small in stature and developmentally delayed.  Furthermore, Mother appeared to be under the influence of drugs, and none of the family members present were able or willing to assist with parenting.  At the time and throughout these proceedings, Father was incarcerated in California awaiting trial on charges of lewd and lascivious acts with a child under the age of fourteen.  DCS took temporary custody of R.J. and T.J, but was unable to locate the youngest child, L.J.

---

[1]        We view the evidence in the light most favorable to upholding the juvenile court's order terminating parental rights.  *Yvonne L. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 415, 422, ¶ 27 (App. 2011) (citing *Maricopa Cty. Juv. Action No. JD-5312*, 178 Ariz. 372, 376 (App. 1994)).

¶4　　　　DCS filed a petition alleging the Children were dependent as to Father upon grounds of neglect.[2]　The juvenile court adjudicated the Children dependent as to Father in November 2017.　Based upon a preponderance of the evidence, the court determined Father was neglecting the Children both through his incarceration and his failure to protect the Children from Mother's substance abuse.　The court also determined that R.J. and T.J. were developmentally delayed, underweight, and essentially nonverbal.　Both were found to have special needs, which were not being met while under the care of their parents.　Further, neither of the two were potty-trained, and doctors attributed their overall condition to neglect.

¶5　　　　In January 2018, DCS found L.J. with Paternal Grandmother and placed her with her siblings.　Like the other Children, L.J. was very small for her age and developmentally delayed; she also had an untreated cranial deformity.

¶6　　　　At the contested severance hearing in September and October 2018, Father acknowledged he had pleaded no-contest to a charge of lewd and lascivious acts with a child under the age of fourteen and had been advised by DCS to take advantage of any services available to him in jail. And although Father claimed to have sent letters and support to Children through family members, the juvenile court found no verification of either. Father expressed a preference that the Children be placed under a permanent guardianship with Paternal Grandmother.　However, a home assessment of Paternal Grandmother revealed several areas of concern, including: a history of substance abuse, uncertainty about her sobriety, a lengthy criminal record, a lack of sufficient and sustainable income, and inexperience dealing with special-needs children.　Based upon these concerns, DCS advised that placing Children with Paternal Grandmother would not be in their best interests.

¶7　　　　The DCS case manager testified that the current foster parents were providing the Children with a loving and nurturing home environment.　The case manager noted that the foster mother had specialized training in special education and, under her care, the Children had shown great improvement in their physical, mental, and emotional health.　Additionallly, the foster parents expressed interest adopting all

---

[2]　　DCS also alleged the Children were dependent as to Mother on the grounds of abandonment, neglect, prolonged substance abuse, and out-of-home placement.　Mother's parental rights were terminated in December 2018.　She did not challenge this order, and is therefore not party to this appeal.

three children, which would allow them to live together in a safe, permanent, and stable home.

**¶8**            After taking the matter under advisement, the juvenile court found DCS had proved by clear and convincing evidence that it had made diligent efforts to provide appropriate reunification services, considering that Father was in jail in another state, and concluded that termination of Father's parental rights was warranted because: (1) Father had "substantially neglected or willfully refused to remedy the circumstances that cause the child[ren] to be in an out-of-home placement" for longer than nine months, *see* Ariz. Rev. Stat. (A.R.S.) § 8-533(B)(8)(a);[3] and (2) Father had neglected the Children by failing to provide a home free from domestic violence, leaving them with inadequate caregivers, and failing to meet their needs, which had resulted in significant physical and developmental delays, *see* A.R.S. § 8-533(B)(2).  The court also found severance was in the Children's best interests and entered an order terminating Father's parental rights.  Father timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

### I.      The Juvenile Court Did Not Err in Finding DCS Made Dilligent Efforts to Provide Reunification Services.

**¶9**            Father argues the juvenile court erred in terminating his parental rights because DCS did not provide reasonable reunification services.  We will affirm a termination order "absent an abuse of discretion or unless the court's findings of fact were clearly erroneous."  *E.R. v. DCS*, 237 Ariz. 56, 58, ¶ 9 (App. 2015) (quoting *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004)).

**¶10**            In certain circumstances, Arizona law requires DCS to make diligent efforts to provide reunification services to parents prior to petitioning to terminate parental rights.  *See* A.R.S. § 8-533(B)(8), (11), (D).  However, if a parent does not believe the reunification efforts are appropriate, it is "incumbent on [the parent] to promptly bring those concerns to the attention of the juvenile court, thereby giving that court a reasonable opportunity to address the matter."  *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶ 18 (App. 2004).  "[A] parent who does not

---

3            Absent material changes from the relevant date, we cite the current version of rules and statutes.

object in the juvenile court is precluded from challenging that finding on appeal." *Id.* at ¶ 16 (citations omitted). Because Father did not express any concerns regarding reunification efforts with the juvenile court, he has waived the issue.

**¶11** Even where reunification efforts are required and the issue is properly preserved, however, DCS is not obliged "to undertake rehabilitative measures that are futile." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999) (citing *Maricopa Cty. Juv. Action No. JS-5209 & No. JS-4963*, 143 Ariz. 178, 189 (App. 1984)). Nor is DCS "required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994) (citing *JS-5209*, 143 Ariz. at 189). Indeed, a parent's incarceration out-of-state affects the availability and effectiveness of services. *See A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 261 (Alaska 1999) ("[T]he practical circumstances surrounding a parent's incarceration — the difficulty of providing resources to inmates generally, the unavailability of specific resources, and the length of incarceration — may have a direct bearing on what active remedial efforts are possible."). Father does not suggest what DCS could or should have done other than encourage him to participate in services available through the jail while he was incarcerated out-of-state. *Cf. James S. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 351, 354, ¶ 14 n.4 (App. 1998) (noting reunification services "are not available in all severance situations" and the length of the parent's sentence "cannot be remedied by reunification services"). Accordingly, we find no error.

## II. Termination of Father's Parental Rights was in the Children's Best Interests.

**¶12** Father argues the juvenile court erred in finding termination was in the Children's best interests. We review the best-interests finding for an abuse of discretion and will only reverse if "as a matter of law, no reasonable fact-finder could have found the evidence satisfied the applicable burden of proof." *Titus S. v. DCS*, 244 Ariz. 365, 369, ¶ 15 (App. 2018) (citing *Mary Lou C.*, 207 Ariz. at 47, ¶ 8, and *Denise R. v. Ariz. Dep't of Econ. Sec.*, 221 Ariz. 92, 94-95, ¶¶ 9-10 (App. 2009)).

**¶13** Termination is in a child's best interests if it would provide the child an affirmative benefit or eliminate a detriment the child would otherwise suffer. *Dominique M. v. DCS*, 240 Ariz. 96, 98, ¶ 8 (App. 2016) (citing *Maricopa Cty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6-7 (1998), and *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 6 (App. 2004)). It is

well-established that "a child's prospective adoption is a benefit that can support a best-interests finding." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4-5, ¶ 16 (2016) (citing *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010)). The court may also consider whether the child is adoptable or would psychologically benefit from the severance, *see JS-501904*, 180 Ariz. at 352 (citing *Yavapai Cty. Juv. Action No. J-9956*, 169 Ariz. 178, 180 (App. 1991), and *Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 243-44 (App. 1988)), and whether there is an adoptive placement or if the current placement is meeting the child's needs, *Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5 (App. 1998) (citing *Pima Cty. Juv. Action No. S-2460*, 162 Ariz. 156, 158-59 (App. 1989), and *Maricopa Cty. Juv. Action No. JS-8490*, 179 Ariz. 102, 107-08 (1994)).

¶14 Here, the juvenile court found the Children's foster parents provided the Children a loving environment in a licensed foster home. The court also found that foster mother has specialized training in special education, and, under her care, the Children have shown great improvement in their physical and mental well-being — a particularly pertinent fact given that all three Children have special needs. Moreover, the foster parents are willing to adopt all three Children into a safe, stable, and permanent home. The record supports these findings, and the findings support the conclusion that severance is in the Children's best interests. We will not second-guess the fact-finder's assessment of the evidence on appeal. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002) ("The juvenile court, as the trier of fact in a termination proceeding, is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings.") (citing *Pima Cty. Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987)). Accordingly, we find no abuse of discretion.

## III. The Juvenile Court Considered Placement with Paternal Grandmother.

¶15 Finally, Father argues the juvenile court erred by not placing the Children with Paternal Grandmother. Generally, the court has "substantial discretion when placing dependent children because the court's primary consideration in dependency cases is the best interest of the child." *Antonio P. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 402, 404, ¶ 8 (App. 2008) (citing A.R.S. § 8-845(A)(2), and *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005)). Thus, we review placement orders for an abuse of discretion. *Id.* (citing *Maricopa Cty. Juv. Action No. JD-6236*, 178 Ariz. 449, 451 (App. 1994)).

**¶16** Father argues the juvenile court was required by A.R.S. § 8-533 and 42 U.S.C. § 671(a)(19) to "consider giving preference to an adult relative over a non-related caregiver when determining a placement for a child." Not so.

**¶17** First, 42 U.S.C. § 671 simply establishes the minimum standards for state foster care and adoption systems to qualify for federal funding, and is therefore not relevant here. More importantly, A.R.S. § 8-533 expresses no preference for placing children with a relative over a non-relative. And, where a statute does reflect a preference for certain types of placements, the statute "does not mandate that the order of preference be strictly followed when a placement is not consistent with the needs of the child." *Antonio P.*, 218 Ariz. at 405, ¶ 12 (citing A.R.S. § 8-514(B)).

**¶18** Second, the record clearly shows DCS and the juvenile court did, in fact, consider (and reject) placement with Paternal Grandmother. Accordingly, Father fails to establish error on this basis.

## CONCLUSION

**¶19** The juvenile court's order terminating Father's parental rights to the Children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA